JOAN KATHLEEN MAGEE, demandante y peticionaria, *v.* CARLOS ARIEL ALBERRO, demandado y recurrido.

*Número:* CE-89-772          *Resuelto:* 30 de abril de 1990

---

*Manuel J. Vera Vera,* abogado de la peticionaria; *Mildred Márquez Noriega,* abogada del recurrido.

El Juez Asociado Señor Ortiz emitió la opinión del Tribunal.

El 29 de febrero de 1988 Carlos A. Alberro presentó demanda de divorcio por trato cruel contra su esposa Joan Kathleen Magee. Posteriormente, las partes acordaron cambiar el trámite. El 2 de noviembre de 1988 se presentó la demanda de divorcio por consentimiento mutuo debidamente juramentada. El tribunal admitió la demanda y dictó sentencia el 18 de noviembre mediante la cual aprobó todas las estipulaciones presentadas por las partes. En una de ellas se estableció que:

> 2. El peticionario, CARLOS ARIEL ALBERRO, se compromete a satisfacer de por vida una pensión a la peticionaria de QUINIENTOS VEINTICINCO DÓLARES ($525.00) o hasta que ésta vuelva a contraer matrimonio. Apéndice 7, pág. 23.

Tres (3) meses después, el señor Alberro solicitó rebaja de pensión alimentaria a doscientos dólares ($200) mensuales. Fundamentó su petición en que al momento de la estipulación estaba en trámites de adquirir un negocio para poder cumplir con el pago, pero que dicho negocio no pudo llevarse a cabo.

La moción de rebaja junto con otros asuntos procesales[1] se señalaron para vista ante la oficial examinadora de alimentos. Celebrada la vista, el tribunal, mediante Resolución de 26 de junio, rebajó la pensión alimentaria a sesenta dólares ($60) mensuales retroactivo a la presentación de la moción. La peticionaria presentó moción de reconsideración y el tribunal denegó la misma al resolver que hubo cambios en la capacidad económica del alimentante; que la alimentista tenía recursos suficientes para sostenerse, y que la estipulación de alimentos era nula por ser contraria al Art. 109 del Código Civil, 31 L.P.R.A. sec. 385, en cuanto excedía el veinticinco por ciento (25%) de los ingresos o rentas del alimentante.

La peticionaria señala cuatro (4) errores:

A. Erró el Tribunal al concluir que hubo un cambio sustancial en la situación del alimentante, ya que no comparó ni ponderó las circunstancias existentes al momento de la rebaja con la existente al momento de la fijación contractual de la pensión por estipulación.

B. Erró el Tribunal al resolver que es contraria a la Ley una estipulación de pensión alimenticia para el ex cónyuge, que excede del 25% de los ingresos del alimentante, cuando esta estipulación se hace como parte de un divorcio por mutuo acuerdo.

C. Erró el Tribunal al decretar nula y eliminar la pensión fijada cuando fue otro juez de igual jerarquía quien aprobó y autorizó tal estipulación.

D. Erró el Tribunal al no remitir a las partes copia del informe del oficial examinador de alimentos, antes de emitir el Tribunal su decisión fundamentada en dicho informe. (Énfasis suprimido.) Petición, págs. 3–4.

Revisamos mediante orden para mostrar causa. El recurrido se limita a plantear que la pensión puede ser variada si hay un cambio en las circunstancias.

---

[1] La Sra. Joan Kathleen Magee presentó el 1ro de mayo de 1989 una moción para solicitar patria potestad, custodia y alimentos. Además, presentó una moción de desacato por pensiones alimentarias atrasadas. El tribunal en su resolución, además de reducir la pensión alimentaria de la recurrente, dispuso una pensión provisional de trescientos setenta y cinco dólares ($375) a los menores en lo que se ve la controversia sobre la custodia de éstos.

## II

■ La pensión alimentaria aquí en controversia fue objeto de transacción y negociación entre las partes como uno de los acuerdos y estipulaciones en un caso de divorcio por consentimiento mutuo.

■ En *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 276–277 (1978), resolvimos que "[c]omo medida adicional que tienda a garantizar que ha mediado debida deliberación no se aceptará petición alguna de divorcio bajo la causal de consentimiento mutuo sin que las partes adjunten las estipulaciones correspondientes sobre la división de sus bienes, *el sustento de las partes* y otras consecuencias del divorcio". (Énfasis suplido.) Incluso, enfatizamos que el tribunal no concederá el divorcio si, a su entender, alguna de las partes no habrá de recibir protección adecuada.

■ En torno a la naturaleza de estas estipulaciones, recientemente resolvimos que una estipulación que finaliza un pleito, suscrita por las partes y aceptada por el tribunal, constituye un contrato de transacción que obliga. *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987).

El Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821, define el contrato de transacción:

> La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada cual alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado.

En *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782, 787 (1981), indicamos que la interpretación del alcance del contrato de transacción está especialmente regulado por el Art. 1714 del Código Civil, 31 L.P.R.A. sec. 4826:

> La transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma.

■ Como norma general, el juez aceptará los convenios y las estipulaciones a las cuales las partes lleguen para finalizar un

pleito y este acuerdo tendrá efecto de cosa juzgada entre las partes. *Canino v. Bellaflores*, 78 D.P.R. 778 (1955); *Negrón Rivera y Bonilla, Ex parte*, ante.

■ Sin embargo, hay que tener presente que en los divorcios por consentimiento mutuo la estipulación presentada no queda al arbitrio exclusivo de las partes. El tribunal deberá velar por que lo estipulado confiera protección adecuada a las partes. En *Figueroa Ferrer v. E.L.A.*, ante, pág. 276, expresamos:

> Nada de lo anterior significa que el divorcio es asunto exclusivo de las partes, sujeto a su puro capricho y antojo. El Estado puede y debe cerciorarse de que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial no es producto de la irreflexión o de la coacción.

■ Cuando se trata de pensiones alimentarias de menores, y a manera de excepción, el juez tiene el deber de asegurarse de que lo acordado no es dañino para los menores. Respecto a las pensiones estipuladas, específicamente resolvimos que "[l]a doctrina ha establecido que la alteración del convenio o estipulación sobre pensión alimenticia en ocasión de un divorcio procederá solamente cuando exista un cambio sustancial en las circunstancias que dieron lugar u originaron el mismo. No basta cualquier cambio en las circunstancias; éste tiene que ser sustancial". *Negrón Rivera y Bonilla, Ex parte*, ante, pág. 77.

Por otro lado, no procede aplicar una regla absoluta de no modificar las pensiones estipuladas debido a que se trató de un contrato de transacción. En *Valencia, Ex parte*, 116 D.P.R. 909, 912–913 (1986), manifestamos:

> El hecho de que la experiencia nos demuestra que en la mayoría de los casos las negativas de pagar estas pensiones desafortunadamente son hijas de la arbitrariedad, no pueden llevar a los Tribunales al establecimiento de reglas inflexibles y férreas a ser aplicadas en todos los casos por igual. El automatismo y absolutismo no tienen cabida en los procedimientos judiciales de nuestro ordenamiento jurídico. El propósito primordial que anima todos los esfuerzos de los funcionarios envueltos en esta delicada misión —la de hacer justicia— así no lo permite.

Para que proceda un cambio en la pensión estipulada, el peticionario tendría que probar que las circunstancias al momento de efectuarse la estipulación han cambiado de forma sustancial. En el análisis que se haga, debe tenerse en cuenta que "'[l]as declaraciones de voluntad deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe'". *Negrón Rivera y Bonilla, Ex parte*, ante, pág. 75.

## III

Al hacer un análisis de los hechos particulares de este caso, resolvemos que no procedía la rebaja de la pensión alimentaria a la ex cónyuge estipulada sólo hace tres (3) meses atrás.

■ El fundamento utilizado por el alimentante fue que no se materializaron unos planes de negocio que tenía al momento de hacer la estipulación. Respecto a ese tipo de condiciones, resolvimos en el caso *Negrón Rivera y Bonilla, Ex parte*, ante, pág. 71, similar al que nos ocupa:

> . . . [L]a estipulación original no se hizo sujeta a la condición suspensiva de obtener igualas profesionales particulares; que como profesional responsable conocedor de las finanzas el señor Negrón Rivera necesariamente tuvo que evaluar y tomar en cuenta su situación económica antes de suscribir dicha estipulación . . . .

También enfatizamos que en casos donde la estipulación está sujeta a una condición suspensiva, la misma tiene que formar parte del texto de la estipulación:

> Una condición suspensiva tan importante como ésta, que podía afectar drásticamente los intereses y el bienestar de los menores, tenía que constar por escrito en la estipulación original si se quería hacer valer. No podía ser objeto de una inferencia. *Negrón Rivera y Bonilla, Ex parte*, ante, pág. 75 esc. 16.

Aunque en esa ocasión hicimos referencia a los menores, entendemos que el ex cónyuge que de buena fe confía y acepta una estipulación se encuentra prácticamente en la misma posición.

■ En el caso de autos, de la estipulación acordada no surgía que la pensión de quinientos dólares ($500) estaba sujeta a que se realizaran ciertos negocios. Los otros fundamentos dados por el tribunal de instancia para modificar la pensión —como las deudas que pagaba el alimentante, el sueldo que recibía, la custodia de los niños y que la alimentista tenía recursos para sostenerse— eran elementos conocidos, presentes al momento de hacer la estipulación. Las partes voluntariamente sometieron la estipulación y el tribunal la aceptó.

Por tal razón, no encontramos el cambio sustancial en las circunstancias del alimentante que justifique una reducción de la pensión alimentaria de quinientos dólares ($500) a sesenta dólares ($60) mensuales.

De todas maneras, si había circunstancias excepcionales que justificaban una rebaja tan drástica como la aquí hecha, los autos no revelan las mismas.

## IV

Se impugna ante este Foro la decisión de decretar nula una estipulación de pensión alimentaria que excede el veinticinco por ciento (25%) de los ingresos o sueldos del alimentante, en contravención al Art. 109 del Código Civil, 31 L.P.R.A. sec. 385, el cual dispone:

> Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, *el Tribunal Superior* podrá *asignarle alimentos discrecionales* de los ingresos, rentas, sueldos o bienes que sean de la propiedad del marido, *sin que pueda exceder la pensión alimenticia de la cuarta parte de ingresos, rentas o sueldos percibidos*.
>
> Si el divorcio se ha decretado por la causal de separación, la mujer podrá solicitar los alimentos a que se refiere el párrafo anterior, si no cuenta con medios suficientes para vivir.
>
> La pensión alimenticia será revocada si llegase a hacerse innecesaria, o cuando la mujer divorciada contrajese segundo matrimonio o cuando viva en público concubinato u observare vida licenciosa. (Énfasis suplido.)

El citado Art. 109 del Código Civil proviene del Art. 177 del Código Civil de 1902, procedente, a su vez, del Art. 160 del Código

Civil del estado de Louisiana. En *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981), analizamos este artículo y encontramos que, debido a su antigüedad, se carece de un diario de sesiones que de modo más científico nos permita investigar los motivos legislativos que impulsaron su redacción original. Eduardo Vázquez Bote, en su artículo *Los alimentos al ex cónyuge, en el divorcio vincular*, 54 Rev. Crít. Der. Inmob. 47, 48 (1978), apunta que:

> En el Ordenamiento original en que tuvo vida el artículo 109, el Código civil de Louisiana, el matrimonio era fiel reflejo, en su reglamentación jurídica, del pensamiento napoleónico, "enriquecido" con las influencias anglosajonas, que hasta finales del siglo pasado negaron sistemáticamente existencia jurídica a la mujer casada. Se comprende así que reconocido el divorcio vincular, si el marido se había convertido en propietario prácticamente de todos los bienes del matrimonio, no fuese nada extraño que, entre los efectos del divorcio, se reconociese la posibilidad de que el ex cónyuge varón asumiese por compensación, la carga de sostener económicamente al hasta entonces su cónyuge.

*Reynolds v. Reynolds*, 228 So. 2d 182 (1969), reitera lo antes citado al decirnos el tribunal sobre el mencionado Art. 160 del Código Civil de Louisiana lo siguiente:

> The alimony provided by Article 160 of the Civil Code is in the nature of a pension accorded by law to the wife. This alimony or pension is a gratuity which the court, in its discretion, may allow and fix at an amount not to exceed more than one third of the husband's income, and it is revocable when it becomes unnecessary.

El Código Civil de Puerto Rico, al igual que el de Louisiana, se configuró con el concepto del divorcio fundado en criterios de culpa y por medio de las causales tipificadas en el propio código. No es hasta el caso de *Figueroa Ferrer v. E.L.A*, ante, pág. 276, que se introduce el consentimiento mutuo como una forma de obtener el divorcio:

> La Constitución del Estado Libre Asociado ampara el derecho de los puertorriqueños a proteger su dignidad y vida íntima en los procedimientos de divorcio mediante la expresión de la mutua decisión de divorciarse o la consignación de ruptura irreparable de los nexos de convivencia matrimonial. No tienen que mediar partes

adversas; puede hacerse por petición conjunta de los cónyuges. No tiene que existir una parte inocente y otra culpable. La esencia del derecho estriba en la abolición de la noción de culpa.

■ En *Negrón Rivera y Bonilla, Ex parte*, ante, hicimos un llamado a la Legislatura para que legislara sobre la causal de consentimiento mutuo, ya que son muchas las situaciones y problemas que surgen durante la tramitación de estos casos. No obstante, en ausencia de legislación, no estamos impedidos de dilucidar situaciones que acarrean el divorcio por consentimiento mutuo. Así lo manifestamos en *Figueroa Ferrer v. E.L.A.*, ante, pág. 277:

> Por último, valga señalar que no es posible eludir la tarea emprendida aquí mediante el argumento de que todo lo concerniente al divorcio debe ser asunto a resolverse por la Asamblea Legislativa. Según expresamos en *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750 (1979), la función de intérpretar la Constitución es atributo indelegable de la Rama Judicial. Es a los Tribunales que les corresponde fijar el significado de las disposiciones constitucionales envueltas aquí.

Integrando con la primera parte de esta opinión, reiteramos en la misma que una estipulación suscrita por las partes y aceptada por el tribunal en un caso de consentimiento mutuo constituye un contrato de transacción. En *Negrón Rivera y Bonilla, Ex parte*, ante, dijimos que como regla general se aceptarán los convenios y las estipulaciones dadas por las partes, velando siempre por que éstas se encuentren debidamente protegidas, en especial cuando hay menores involucrados.

En el caso de autos, las partes voluntariamente estipularon la pensión alimentaria; ambas partes estuvieron de acuerdo y el juez aceptó la misma. El principio de buena fe rige en la interpretación de estos contratos. *Negrón Rivera y Bonilla, Ex parte*, ante.

■ En virtud de lo anteriormente discutido, resolvemos que el Art. 109 del Código Civil, ante, aplica sólo en aquellos casos contenciosos en que el tribunal, a su discreción, le impone a una parte que pague una pensión alimentaria a su ex cónyuge. El

límite que impone el artículo no aplica en aquellos casos donde son las propias partes las que voluntariamente estipulan la cantidad a pagarse. Cuando existe un contrato en el que se conviene la prestación de alimentos, como regla general, hay que atender a sus cláusulas y respetar lo convenido. Por consiguiente, la estipulación aquí en controversia no es nula.

Respecto al cuarto error, entendemos que dado que no procede la rebaja no es necesario entrar a discutir este punto.

Por todo lo cual, *se deja sin efecto la resolución recurrida y se restablece la pensión originalmente acordada entre las partes. Ello sin perjuicio de que se considere cualquier solicitud fundamentada que pueda presentar el alimentante.*