En el Tribunal Supremo de Puerto Rico

| Josefina Cantellops<br>     Demandante-Recurrida<br><br>     V.<br><br>Sergio Cautiño Bird<br>     Demandado-Recurrente | Certiorari<br><br><br>98TSPR136 |
|---|---|

Número del Caso: CC-97-501

Abogados de Sergio Cautiño Bird:     Lcda. Hilda Rodríguez Forteza
                                     Lcdo. Dennis D. Martínez Colón

Abogada de Josefina Cantellops:     Lcda. Maritza González Ortiz

Tribunal de Instancia: Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Jorge Orama Monroig

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Liana Fiol Matta

Fecha: 10/16/1998

Materia: Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Josefina Cantellops

    Demandante-recurrida

       v.                        CC-97-501       Alimentos
                                                      Ex-Cónyuge

Sergio Cautiño Bird

    Demandado-recurrente

Opinión del Tribunal emitida por el Juez Asociado señor CORRADA DEL RÍO

San Juan, Puerto Rico, a 16 de octubre de 1998.

En el caso de autos debemos determinar si a la luz de lo que dispone el Artículo 109 del Código Civil de Puerto Rico, 31 L.P.R.A. §385, según enmendado por la Ley Núm. 25 de 16 de febrero de 1995, existe el derecho de los ex-cónyuges divorciados por consentimiento mutuo a reclamarse alimentos.

El recurrente señor Sergio Cautiño Bird solicita la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones la cual, a su vez, revocó una Sentencia del Tribunal de Primera Instancia, Sala de San Juan. Mediante dicha sentencia, el tribunal de instancia desestimó la

acción mediante la cual la señora Josefina Cantellops solicitó alimentos de su ex-cónyuge bajo el Artículo 109, supra. Por entender que actuó correctamente el Tribunal de Circuito de Apelaciones al revocar, confirmamos la sentencia recurrida.

I

Josefina Cantellops, recurrida, y Sergio Cautiño Bird, recurrente, contrajeron matrimonio el 27 de febrero de 1958 en el estado de la Florida. Estuvieron casados durante veintitrés (23) años y procrearon dos hijos que al presente son mayores de edad. El 20 de enero de 1981 obtuvieron sentencia de divorcio declarando roto y disuelto el vínculo matrimonial por consentimiento mutuo. Con la petición de divorcio -y tal como lo exige la jurisprudencia- presentaron un documento suscrito por ambos en el que disponían todo lo relacionado con los bienes y las obligaciones gananciales, además de precisar los detalles relacionados con la custodia, patria potestad y pensión alimentaria de una hija que en esos momentos era menor de edad. Nada se dispuso en cuanto a una pensión alimentaria a favor de la recurrida señora Cantellops.

El 2 de octubre de 1995, más de catorce años después, la recurrida presentó contra su ex-cónyuge una acción solicitando alimentos al amparo del Artículo 109 del Código Civil, supra. En su demanda alegó bajo juramento que en 1990 su salud se afectó seriamente y que como consecuencia de ello no había podido generar ingresos, ni había tenido otros recursos económicos para sufragar sus gastos personales y aquellos que le requería su condición médica. Alegó, además, que ni ella ni su ex-cónyuge habían vuelto a casarse y que éste último contaba con suficientes recursos económicos para sufragar una pensión alimentaria post-divorcio a su favor de $4,000.00 mensuales.

El recurrente contestó la demanda el 19 de abril de 1996, y luego de un período de descubrimiento de prueba, solicitó la desestimación el 18 de junio de 1996. Arguyó que por no tener la

recurrida su domicilio en Puerto Rico, a ésta no le eran de aplicación las disposiciones del Código Civil; que el Artículo 109 del Código Civil aplica sólo a aquellos ex-cónyuges que obtuvieron el divorcio por las causales establecidas en el Artículo 96 de dicho Código,[1] dentro de las cuales no se encuentra el divorcio por consentimiento mutuo; que los llamados a la obligación de alimentar a su ex –cónyuge son sus parientes legítimos; que la peticionaria cuenta con suficientes medios para vivir y que el Artículo 109, según enmendado por la Ley Núm. 25 de 16 de febrero de 1995, es inconstitucional en su aplicación retroactiva a los hechos que dieron base a la acción de alimentos en su contra. El 16 de julio de 1996 la recurrida presentó "Escrito en Oposición a Moción sobre Desestimación". Por su parte, el 7 de agosto de 1996, el recurrente presentó "Réplica a Escrito en Oposición a Moción de Desestimación".

---

[1] 31 L.P.R.A. §321.

Tras una vista en la que ambas partes argumentaron sus respectivas posiciones con respecto a la moción de desestimación, el Tribunal de Primera Instancia la acogió y dictó sentencia el 1ro de octubre de 1996, notificada el 9 de octubre de 1996, mediante la cual desestimó la demanda presentada, discutiendo uno sólo de los planteamientos contenidos en la Moción de Desestimación. Determinó que a la recurrida no le asistía el derecho a solicitar alimentos post-divorcio porque las partes habían obtenido el divorcio por consentimiento mutuo y no por una de las causales dispuestas por el Artículo 96 del Código Civil, supra. El Tribunal basó su determinación en la letra del Artículo 109, supra, según fue enmendado en 1995, la cual según expuso, revela la intención expresa y deliberada del legislador de conceder la acción de alimentos post-divorcio tan sólo a aquellos cónyuges que obtienen el divorcio por cualquiera de las causales consignadas en el Artículo 96 del Código Civil dentro de las cuales nunca se ha incluido el divorcio por consentimiento mutuo. Asimismo, el Juez de instancia fundamentó su decisión en el historial legislativo del P. del S. 652 del año 1994 que finalmente se convirtió en la Ley Núm. 25, supra. A esos efectos indica en su sentencia que el proyecto original no hacía referencia al Artículo 96 del Código Civil pero que el proyecto final añadió esa referencia.

Inconforme, la recurrida presentó petición de certiorari ante el Tribunal de Circuito de Apelaciones. El foro apelativo dictó sentencia el 30 de junio de 1996, archivada en autos copia de su notificación el 15 de julio de 1997, mediante la cual expidió el auto solicitado y revocó la sentencia recurrida, devolviendo el caso para la continuación de los procedimientos. Determinó que al aprobar la Ley Núm. 25, supra, el legislador nunca tuvo la intención de excluir a las personas divorciadas por consentimiento mutuo del derecho a la pensión alimentaria que concede el Artículo 109 a los ex -cónyuges; y que la referencia a las causales sólo tuvo el

propósito de eliminar el concepto de culpa del texto del artículo y derogar, porque ya no tenía consecuencia jurídica alguna, el segundo párrafo del mismo, que concedía a ambos cónyuges el derecho a la pensión cuando la causal del divorcio es la separación. El 30 de julio de 1997 el recurrente presentó oportunamente una Moción de Reconsideración. Esta fue declarada sin lugar mediante Resolución de 6 de agosto de 1997, archivada en autos copia de su notificación el 12 de agosto de 1997.

Inconforme con la sentencia del Tribunal de Circuito de Apelaciones el señor Cautiño recurre ante nos alegando la comisión del siguiente error:

> "Erró el Tribunal Apelativo al hacer caso omiso a la letra clara del Artículo 109 según enmendado y 'legislar' dándole derechos no contemplados por el Legislador a aquellas personas que han obtenido el divorcio por un procedimiento que no está contenido entre las causales del Artículo 96."

Mediante Resolución de 7 de noviembre de 1997, notificada el 10 de noviembre de 1997, decidimos revisar mediante *certiorari*. Habiéndose elevado los autos y comparecido ambas partes mediante sus respectivos alegatos estamos en posición de resolver.

II

En su petición de *certiorari* el recurrente discute los antecedentes histórico-jurídicos del artículo 109 del Código Civil, <u>supra</u>, que indican que hasta el 1995 el artículo respondía al principio de culpa; a las expectativas de las partes al amparo del derecho vigente al momento de divorciarse, cuando, según expone el recurrente, entregó a la recurrida prácticamente todo el caudal ganancial, confiando en que el Artículo 109 no le era aplicable; a la naturaleza del divorcio por consentimiento mutuo como producto de un pacto entre las partes; a la irretroactividad de las leyes en perjuicio de derechos adquiridos y a principios constitucionales tales como los que prohiben el menoscabo de las obligaciones contractuales.

Por su parte, la parte recurrida sostiene que el consentimiento mutuo es una causal tan propia para obtener el divorcio como las estatutarias, lo cual le da el derecho a cualquiera de los ex-cónyuges a solicitar alimentos.

## III

El matrimonio, tal como aparece descrito en el Artículo 68 del Código Civil de Puerto Rico[2] es una institución civil que surge en virtud de un contrato civil mediante el cual un hombre y una mujer se comprometen a ser esposos y a cumplir con las responsabilidades y deberes que les impone la ley. Según surge del Artículo 95 del Código Civil[3], para que pueda quedar roto y disuelto el vínculo matrimonial tiene que concurrir cualquiera de las siguientes situaciones: sobrevenir la muerte de cualquiera de los cónyuges; declararse la nulidad del matrimonio o mediar una sentencia válida de divorcio.

A renglón seguido el Artículo 96 del mismo cuerpo de ley[4] enumera diez (10) de las causales que al presente existen en nuestra jurisdicción para obtener legalmente el divorcio.[5] Entre éstas no se encuentra el divorcio por consentimiento mutuo.

_____

[2] 31 L.P.R.A. §221.

[3] 31 L.P.R.A. §301.

[4] 31 L.P.R.A. §321.

[5] Según se desprende del mismo, las causas de divorcio son:

"(1) Adulterio de cualquiera de los cónyuges.
(2) La condena de reclusión de uno de los cónyuges por delito grave, excepto cuando dicho cónyuge se acoja a los beneficios de sentencia suspendida.
(3) La embriaguez habitual o el uso continuo o excesivo de opio, morfina o cualquier otro narcótico.
(4) El trato cruel o las injurias graves.
(5) El abandono de la mujer por su marido o del marido por su mujer, por el término mayor de un (1) año.
(6) La impotencia absoluta, perpetua e incurable sobrevenida después del matri-monio.

continúa...

La causal de divorcio por consentimiento mutuo encuentra su génesis en el caso *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978). Es decir, es de origen jurisprudencial. En aquel momento por entender que en nuestra jurisdicción la legislación en materia de divorcio se encontraba rezagada —si la comparábamos con otras— y reconociendo que no siempre el divorcio tenía que tener carácter adversativo; que bien podían dos personas reconocer la necesidad de finalizar su

continuación...

(7) El conato del marido o de la mujer para corromper a sus hijos o prostituir a sus hijas, y la connivencia en su corrupción o prostitución.

(8) La propuesta del marido para prostituir a su mujer.

(9) La separación de ambos cónyuges por un período de tiempo sin interrupción de más de dos (2) años. Probado satisfactoriamente la separación por el expresado tiempo de más de dos (2) años, al dictarse sentencia no se considerará a ninguno de los cónyuges inocente ni culpable.

(10) La locura incurable de cualquiera de los cónyuges sobrevenida después del matrimonio, por un período de tiempo de más de siete (7) años, cuando impida gravemente la convivencia espiritual de los cónyuges, comprobada satisfactoriamente en juicio por el dictamen de dos peritos médicos; Disponiéndose que en tales casos la corte nombrará un defensor judicial al cónyuge loco para que lo represente en el juicio. El cónyuge demandante vendrá obligado a proteger y satisfacer las necesidades del cónyuge loco en proporción a su condición y medios de fortuna, mientras sea necesaria para su subsistencia; Disponiéndose, además, que esta obligación en ningún momento ha de ser menos de dos quintas (2/5) partes del ingreso bruto por sueldos o salarios o entradas de cualquier otra clase que tuviere el cónyuge demandante."

vida en pareja sin necesidad de engañar a los tribunales o exponer ante el escrutinio público cuáles eran sus íntimas razones para finalizar la unión conyugal, este Tribunal reconoció el mutuo consentimiento como causal de divorcio. Este Tribunal, por voz de su Juez Presidente señor Trías Monge, sentenció que:

> "[l]as Secs. 1 y 8 del Art. II de la Constitución no permiten limitar los fundamentos del divorcio en Puerto Rico dentro de las circunstancias de este caso a causales derivadas del concepto de la culpa. Tales disposiciones constitucionales se basan en principios con aspiración de universalidad y la realidad predominante en el mundo de hoy, como hemos visto, es la aceptación del divorcio sin culpa. La Constitución del Estado Libre Asociado ampara el derecho de los puertorriqueños a proteger su dignidad y vida íntima en los procedimientos de divorcio mediante la expresión de la mutua decisión de divorciarse o la consignación de ruptura irreparable de los nexos de convivencia matrimonial. No tienen que mediar partes adversas; puede hacerse por petición conjunta de los cónyuges. No tiene que existir una parte inocente y otra culpable. La esencia del derecho estriba en la abolición de la noción de culpa. No necesitan las partes expresar las razones de su decisión si a su juicio ello conlleva la revelación indeseada de penosos detalles de su vida íntima. No puede forzarse a las partes a vivir ininterrumpidamente separados por dos años como único medio de ejercer su derecho a la intimidad y la inviolabilidad de su dignidad humana. Esta es una causal legítima para quienes deseen invocarla pero, según hemos advertido, ella representa tan solo una etapa intermedia, primitiva e incompleta de la evolución del divorcio culposo al divorcio sin culpa." *Figueroa Ferrer v. E.L.A.,* supra, pág. 276. (Enfasis nuestro)

Se reconoció, pues, a que a partir de ese momento, en nuestra jurisdicción sería causa válida y legítima para obtener el divorcio –porque así lo exigen el derecho a la intimidad y el derecho que tienen las personas a defender la inviolabilidad de su dignidad– la mutua decisión de los cónyuges de divorciarse.

No obstante, aún reconociendo que se trataba de un asunto esencialmente íntimo, este Tribunal reconoció la necesidad de que el Estado preservara su obligación de velar porque el divorcio no fuera consecuencia de algún tipo de coacción o de la irreflexión. En aras de ese objetivo se estableció la necesidad de incluir las

estipulaciones necesarias que dispusieran de asuntos tan delicados como la división de los bienes gananciales y el sustento de las partes. *Figueroa Ferrer v. E.L.A.,* supra, págs. 276-277. En consecuencia y como corolario de lo allí resuelto, se declaró inconstitucional el Artículo 97 del Código Civil[6] –disposición legal que prohibía la aquiesencia entre los cónyuges a los fines de obtener el divorcio– y otras disposiciones opuestas a los principios consignados en la opinión.

IV

Teniendo este trasfondo como punto de partida, debemos determinar si el Artículo 109 del Código Civil, supra, según enmendado por la Ley Núm. 25 de 16 de febrero de 1995, veda el derecho que puedan tener los ex-cónyuges a reclamarse

---

[6] 31 L.P.R.A. §331.

alimentos entre sí cuando ha mediado sentencia de divorcio por consentimiento mutuo.

Los alimentos entre ex-cónyuges están regulados por el Artículo 109 del Código Civil, supra, según enmendado en 1995. A esos efectos éste dispone que:

"Si decretado el divorcio por cualesquiera de las causales que establece [el Art. 96], cualesquiera de los ex-cónyuges no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:

(a) Los acuerdos a que hubiesen llegado los ex cónyuges.
(b) La edad y el estado de salud.
(c) La cualificación profesional y las probabilidades de acceso a un empleo.
(d) La dedicación pasada y futura a la familia.
(e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.
(f) La duración del matrimonio y de la convivencia conyugal.
(g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.
(h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustan-ciales en la situación, los ingresos y la fortuna de uno u otro ex cónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato."[7]

Es principio medular en nuestra jurisdicción que la institución de alimentos tiene un carácter dinámico y está revestida del mayor interés público. *González v. Suárez Milán*, Op. de 30 de junio de 1992, 131 D.P.R. ___ (1992), 92 J.T.S. 91, pág. 9690. Cónsono con ese principio hemos requerido que al interpretarse el Artículo 109,

---

[7] Conviene señalar que en su versión anterior a 1995, el Artículo 109 de nuestro Código Civil, -fuente estatutaria de donde dimana el derecho de alimentos entre ex-cónyuges- tuvo su génesis en el Artículo 177 de Código Civil de 1902,

se haga flexiblemente "sin ceñirse a conceptos rígidos que impidan o dificulten lograr equitativamente los propósitos importantes que informan la institución de alimentos en nuestro ordenamiento jurídico." Id.

El derecho a solicitar y recibir alimentos es de carácter vitalicio e imprescriptible. En *Suria v. Fernández Negrón*, 101 D.P.R. 316, 320 (1973) distinguimos entre el término de tiempo que tenía la mujer para solicitar alimentos a su ex-cónyuge y el período que tenía para iniciar una acción para cobrar pensiones alimentarias ya vencidas. Concluimos que por depender estrictamente del criterio de necesidad, la acción para solicitar alimentos no prescribía. Distinto el caso cuando se trata de pensiones ya vencidas. Razonamos allí que el término de prescripción de (5) años le aplica a esta segunda circunstancia porque "mal podía justificarse la necesidad" si aun habiéndose decretado una pensión nada había hecho la mujer por cobrarla.

Asimismo, anteriormente hemos sostenido que los dictámenes sobre pensiones alimentarias siempre están sujetos a modificación, según varíe sustancialmente de un lado la capacidad del alimentante para proveer alimentos o del otro la necesidad del alimentista. *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987); *Valencia Ex parte*, 116 D.P.R. 909 (1986). Los criterios de necesidad y capacidad son los factores determinantes al momento de establecer si existe el derecho a recibir alimentos. Los alimentos "responden a una necesidad imperiosa, sin la cual no serían exigibles, y la ley supone que no existe necesidad mientras no se reclaman judicialmente." *Suria v. Fernández Negrón*, supra, pág. 318.

Tal como fue originalmente redactado el Artículo 109, éste proveía que sólo la mujer, cuando se dieran los requisitos que allí se disponían, era acreedora de tal derecho, siendo en consecuencia

---

y este último proviene a su vez del Artículo 160 del Código Civil de Louisiana. *González v. Suárez Milán*, supra; *Magee v. Alberro*, 126 D.P.R. 228 (1990); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981).

en el ex-esposo sobre quien recaía la responsabilidad de alimentar.[8]
Sin embargo, en *Milán Rodríguez v. Muñoz*, supra, este Tribunal por
voz del Juez Asociado señor Negrón García validó el interés
legislativo de que no sólo durante la vigencia del matrimonio sino
aún después de disuelto éste, se mantuviera –aunque en estado
latente– la obligación recíproca entre los ex-cónyuges de prestarse
alimentos. En consecuencia concluimos que tal disposición de ley
debía entenderse extensiva –siempre que lo justificara la necesidad
del alimentista– tanto al hombre como a la mujer.[9]

---

[8] El anterior Artículo 109, antes de ser enmendado en 1995
por la Ley Núm. 25, supra, leía como sigue:

"Si la mujer que ha obtenido el divorcio
no cuenta con suficientes medios para vivir,
el Tribunal Superior podrá asignarle alimentos
discre-cionales de los ingresos, rentas,
sueldos o bienes que sean de la propiedad del
marido, sin que pueda

continúa...

...continuación

exceder la pensión alimenticia de la cuarta
parte de los ingresos, rentas o sueldos
percibidos.

Si el divorcio se ha decretado por la
causal de separación, la mujer podrá solicitar
los alimentos a que se refiere el párrafo
anterior, si no cuenta con medios
suficientes para vivir.

La pensión alimenticia será revocada si
llegase a hacerse innece-saria, o cuando la
mujer divorciada contrajese segundo matrimonio
o cuando viva en público concubinato u
observare vida licenciosa."

Véanse, además, *Milán Rodríguez v. Muñoz*,
supra; *Suria v. Fernández Ne-grón*, supra;
*Meléndez v. Tribunal Superior*, 77 D.P.R. 535
(1954); *Sacare-llo v. Rubio*, 44 D.P.R. 883
(1933); *Puigdollers v. Monroig*, 26 D.P.R. 310
(1918); *Morales v. Rivera*, 8 D.P.R. 463
(1905).

[9] El Tribunal luego de someter a un escrutinio estricto la
clasificación por sexo hecha en el artículo 109, supra, reconoció
el carácter discriminatorio de éste;
continúa...
...continuación
sin embargo, reconoció también el deber de los Tribunales

El Artículo 109 original, además, disponía que sólo el ex-cónyuge "que hubiera obtenido el divorcio" tendría el derecho a recibir alimentos. Ello implicaba que sólo el cónyuge inocente se beneficiaría de la pensión de la que en su día pudiera ser acreedor. Asimismo, de la lectura de este artículo surgía la existencia de una cantidad máxima a ser concedida al cónyuge necesitado.

Mediante la Ley Núm. 25, _supra_, se extendió al hombre el derecho a recibir alimentos después de haberse decretado la disolución del matrimonio mediante sentencia de divorcio – situación que ya había sido contemplada por este Tribunal en _Milán Rodríguez v. Muñoz_, _supra_,; se eliminó el concepto de culpa de la letra de la disposición legal y se eliminó la cuantía máxima a ser concedida. La nueva ley tuvo el propósito adicional de incorporar al Artículo 109, ocho (8) circunstancias que el juzgador debe examinar al determinar el monto de la pensión.[10]

Atendidos los propósitos de la Ley Núm. 25, _supra_, nos preguntamos, ¿quería el legislador excluir a las personas divorciadas por consentimiento mutuo del derecho a la pensión post-divorcio cuando aprobó los cambios al Artículo 109? Concluimos que no.

En aras de conocer la intención del legislador al enmendar el Artículo 109, _supra_, hemos examinado minuciosamente el historial

---

de salvar la constitucionalidad de las leyes haciendo interpretaciones dirigidas a la consecución de los principios en ellas contenido. En _Milán_, dijimos que:

> "[e]n materia de hermenéutica constitucional y ante estatutos que adolecen de inconstitucionalidad por sub-inclusión, se reconoce la facultad de los tribunales de extender los beneficios estatutarios a aquellos grupos o clases excluidos." (citas omitidas) _Milán Rodríguez v. Muñoz, supra_, pág. 618.

[10] Dichas circunstancias se importaron de España, a través de la citada Ley Núm. 25, _supra_. Allá el Artículo 97

continúa...

...continuación

del Código Civil - disposición legal del cual se tomaron- regula la pensión post-divorcio. La diferencia fundamental entre una y la otra es que la disposición del Código Civil español tiene un carácter de pensión compensatoria mientras que en

legislativo del Proyecto del Senado 652, génesis de la Ley Núm. 25, supra. Se desprende del Informe de la Comisión de Gobierno al pleno del Senado de 20 de junio de 1994, que aunque originalmente la intención era enmendar el artículo a los únicos efectos de extender al hombre el derecho a recibir alimentos después del divorcio, el alcance del proyecto se amplió por las recomendaciones del Secretario de Justicia. Entre las recomendaciones que éste le hizo a la Asamblea Legislativa, y pertinente al caso de autos, se incluyó la de eliminar cualquier referencia al concepto de culpa, concepto que había estado vinculado al divorcio desde que el mismo se instituyó en Puerto Rico. La justificación para su recomendación la encontró el Secretario de Justicia en la tendencia de la propia Asamblea Legislativa de ir eliminando el concepto de culpa en algunas de nuestras instituciones jurídicas.[11] En el caso particular de la pensión alimentaria entre ex-cónyuges, con la adopción de la recomendación, se alteró el lenguaje del artículo, para sustituir la frase: "si uno de los cónyuges que ha obtenido el divorcio..." por la de: "si decretado el divorcio por cualquiera de las causales que establece el Artículo 96 de este Código, cualquiera de los ex-cónyuges...". (Enfasis nuestro). Es decir, se extendió literalmente el derecho del hombre a solicitar alimentos cuando así lo necesitara y se eliminó el elemento culposo que hasta ese momento había permeado la interpretación del Artículo 109, supra. No surge del historial legislativo que el propósito de dicha enmienda fuese el de excluir el derecho a pedir alimentos de ex-cónyuges cuando la causal para el divorcio fuese el consentimiento mutuo.

---

la nuestra su carácter es eminentemente alimentario. Para una discusión más detallada véase Raúl Serrano Geyls, *La nueva ley de pensiones alimentarias post-divorcio*, 30 Rev. Jur. U.I.P.R., 97 (1996).

[11] Véase a modo de ejemplo la Ley Núm. 101 de 2 de junio de 1976. Leyes de Puerto Rico, 1976, págs. 316-318. Esta eliminó la designación automática de la mujer como cónyuge inocente cuando se produce un divorcio por la causal de separación bajo el inciso (9) del Artículo 96 del Código Civil, 31 L.P.R.A. sec. 321. Además, constituyó esta causal como una no-culposa.

El caso de autos trata de un matrimonio que obtuvo el divorcio por consentimiento mutuo. Como parte de la solicitud de divorcio los peticionarios, luego de confirmar que habían recibido la adecuada orientación y que no había mediado ningún tipo de coacción, dispusieron todo lo relacionado a los aspectos fundamentales de la relación con su hija menor. A esos efectos expusieron que "en forma inteligente han logrado conformar sus deseos y dejar para el futuro reglamentado [sic] lo concerniente a <u>alimentos, custodia y patria potestad de la menor antes mencionada</u>, relaciones paterno-filiales, residencia de la esposa y finalmente, lo referente a bienes gananciales."[12] (Enfasis nuestro). Con dicha petición presentaron un "Acuerdo sobre División de Bienes Gananciales y otros Fines". De la lectura de dicho documento no se desprende acuerdo alguno sobre la pensión alimentaria post-divorcio.

Catorce años más tarde, la recurrida solicitó de su ex-cónyuge, el recurrente, una pensión alimentaria aduciendo que hacía unos años venía contemplando problemas de salud por lo que no había podido generar ingresos y sostenerse económicamente. Alegó, asimismo, que su ex esposo contaba con suficientes bienes para pagar la pensión alimentaria; además de que ninguno de los dos había vuelto a contraer segundas nupcias.

El recurrente pretende que interpretemos que el lenguaje utilizado en la petición de divorcio por consentimiento mutuo tuvo la intención de regular lo relacionado con los alimentos post-divorcio, constituyéndose en un contrato de transacción con carácter de cosa juzgada. No nos persuade. Una lectura simple de la Petición de Divorcio es suficiente para descubrir que los peticionarios nunca tuvieron la intención de regular tal aspecto de sus relaciones. Más que regular lo relacionado con los alimentos entre los ex -cónyuges, lo que se pretendía era determinar la

---

[12] Petición de Divorcio de 29 de agosto de 1980, Apéndice, pág. 1.

pensión alimentaria de la entonces todavía hija menor del matrimonio. Aún suponiendo que se hubiera pretendido pactar sobre alimentos futuros de ex-cónyuges, por estar la institución de alimentos revestida del mayor interés público, cualquier acuerdo que se hubiere efectuado, no tiene, ni puede tener carácter invariable, o constituir una renuncia a derechos futuros de alimentación.[13]

Sabido es que en nuestra jurisdicción tales estipulaciones o acuerdos no tienen el carácter de cosa juzgada. Véase, *Magee v. Alberro*, supra; *Ex Parte Negrón y Bonilla*, supra; *Fenning v. Tribunal Superior*, 96 D.P.R. 615 (1968). No obstante, no quiere ello decir que ante cualquier cambio variarán las estipulaciones previamente hechas; tienen que concurrir cambios sustanciales en las necesidades del alimentista o los recursos económicos del alimentante. Id.

Así las cosas, y a base de lo previamente expuesto, entendemos que al sustituir la frase "uno de los cónyuges que ha obtenido el divorcio" por "decretado el divorcio por cualquiera de las causales que establece el Artículo 96" el legislador nunca tuvo la intención de excluir del alcance del Artículo 109, supra, el divorcio por consentimiento mutuo.[14] Al contrario, lo que pretendió en todo momento fue eliminar

el concepto de culpa y el discrimen por sexo. Por lo tanto, en vista de lo anterior, concluimos que una vez disuelto el matrimonio –por cualquiera de las causales, incluyendo el consentimiento mutuo– nace un derecho a pensión alimentaria post-divorcio cuando ello se justifique, a base de los

---

[13] Específicamente el Artículo 1713 de nuestro Código Civil, 31 L.P.R.A. §4825, prohibe el que las personas puedan transigir sobre su estado civil, cuestiones matrimoniales o alimentos futuros. Véase, además, *Rubio Sacarello v. Roig*, supra, pág. 350; *Benítez v. Benítez,* 64 D.P.R. 756, 759 (1945).

[14] No olvidemos que "[l]as leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira y no deben desvincularse del problema humano cuya solución persiguen." *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733, 737 (1989).

criterios de necesidad y capacidad. Determinar lo contrario daría lugar a una interpretación inflexible del Artículo 109, _supra_, sin que se nos haya dado razón válida alguna para tan cruda diferenciación.[15]

No podemos suponer, como lo hace el recurrente, que el legislador tuvo la intención de excluir la causal de divorcio por consentimiento mutuo de los beneficios del Art. 109 del Código Civil al enmendarlo en 1995. Ello significaría imputarle a éste una acción inconstitucional: la de degradar una causal que dimana del derecho constitucional a la intimidad y, además, un intento de menoscabar el dictamen de este foro interpretando la Constitución en el caso de _Figueroa Ferrer v. E.L.A.,_ _supra_.

Procedería, si concluyésemos que el propósito fue excluyente, extender los beneficios estatutarios al grupo

---

[15] Véase _Milán Rodríguez v. Muñoz_, _supra_, pág. 617.

excluido, es decir, a los ex-cónyuges que se han divorciado por la causal de consentimiento mutuo que demuestren la necesidad de alimentos y la capacidad del otro o la otra para proveerlos, aplicando los principios de hermenéutica constitucional que enunciamos en *Milán Rodríguez v. Muñoz,* <u>supra</u>.[16] No obstante, ello resulta innecesario a la luz de la interpretación no excluyente que hemos hecho de la Ley Núm. 25, <u>supra</u>, enmendatoria del Art. 109.

No vemos ningún fundamento por el cual el o la ex-cónyuge con necesidad no pueda reclamar alimentos por el hecho de haberse divorciado mediante el procedimiento de mutuo consentimiento. En consecuencia, siendo este derecho uno susceptible de invocarse en cualquier momento con posterioridad al divorcio –por su carácter vitalicio e

imprescriptible– bien podía la señora Cantellops, o aún el señor Cautiño, ser acreedores del derecho a una pensión alimentaria post-divorcio, de cumplir con los criterios aplicables.

En la eventualidad de que el Tribunal de Primera Instancia entienda que en el caso de autos procede la pensión alimentaria, los argumentos esgrimidos por el peticionario en relación con el tiempo transcurrido desde la sentencia de divorcio, así como los acuerdos particulares en la división de los bienes de la sociedad legal de gananciales contenidos en la estipulación, podrán ser tomados en cuenta junto a las demás consideraciones pertinentes – según lo dispone el Artículo 109 – para determinar el monto de la pensión alimentaria.

Por los fundamentos antes expuestos se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelven los autos al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí expresado.

BALTASAR CORRADA DEL RIO

---

[16] Ver nota al calce 9, ante.

JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Josefina Cantellops

    Demandante-recurrida

       v.                 CC-97-501       Alimentos
                                                 Ex-Cónyuge

Sergio Cautiño Bird

    Demandado-recurrente

SENTENCIA

San Juan, Puerto Rico, a 16 de octubre de 1998.

      Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelven los autos al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí expresado.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no interviene.

                      Isabel Llompart Zeno
                  Secretaria del Tribunal Supremo