TEXTO COMPLETO DE LA RESOLUCION
Comparecen ante nos, Irma I. Soto Rivera y otros (en adelante los apelantes) y nos solicitan la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón el día 30 de julio de 1999, notificada y archivada en autos el 8 de septiembre del mismo año. Mediante la misma, el tribunal de instancia desestimó la demanda sobre hostigamiento sexual, ley de salario mínimo y despido injustificado, presentada por los apelantes en contra de Trigo Corporation y otros (en adelante los apelados), así como la reconvención presentada por el co-demandado Juan Salgado (en adelante Salgado).
Por referirse el presente recurso de certiorari a la revisión de una sentencia final, lo acogemos como una apelación. Ley de la Judicatura de Puerto Rico de 1994, según enmendada, Art. 4.002(a).
Luego de estudiado los hechos y el derecho aplicable, CONFIRMAMOS la sentencia apelada.
I
Los hechos que dan inicio a la presente controversia son los siguientes. La Sra. Tima I. Soto Rivera (en adelante Soto), trabajó para Trigo Corporation (en adelante Trigo), desde octubre de 1991 hasta marzo de 1996, lavando botellas en la línea de producción.
Las facilidades físicas de Trigo constan de tres estructuras con dos edificios principales, uno de oficinas administrativas y el otro donde ubica la planta de producción. Salgado es el gerente de planta y le correspondía ( *826 a éste determinar qué tareas realizaría Soto de acuerdo a las necesidades operacionales de la empresa, o lavando botellas o directamente en la línea de producción. En Trigo existía, a la fecha de los alegados hechos, y existe, una política pública contra el hostigamiento sexual, la cual cada empleado está obligado a firmar, luego de leerla. Además, en el área del ponchador de la empresa hay un cartelón que discute la misma. Soto vio y leyó el documento que contenía la política pública sobre hostigamiento sexual el 26 de noviembre de 1992, cuando le fue entregada por la Sra. Sonia Vargas en su área de trabajo.
El 5 de marzo de 1996, Soto se encontraba trabajando en la línea de producción cotejando las botellas que salían de la etiquetadora. A su izquierda se encontraba el empleado Ricardo Colón, frente a ella, al otro lado de la mesa, se encontraba María García, al final de la línea se encontraba un empleado de nombre Ramito y el Sr. Oscar Torres se encontraba en la sopladora. Las partes estipularon un dibujo de que esa era la posición de los empleados el día de los alegados hechos, luego del tribunal haber realizado una vista ocular en el lugar.
Durante la mañana, Soto le indicó a Salgado que la había tocado en la cintura cuando la saludó, éste lo negó pero le indicó que si ocurrió fue accidentalmente. Salgado entendió que Soto había quedado satisfecha con su explicación y continuó hablando con ella sobre un problema que había tenido ésta con la garantía de su carro.
Esa tarde, los apelantes se presentaron a la casa de los suegros de Salgado y le reclamaron por lo sucedido en la empresa durante la mañana. Salgado negó los hechos, pero pidió disculpas a los apelantes si había hecho algo que ofendiera a Soto. El esposo de Soto dijo durante la discusión que ésta no se presentaría más a trabajar.
El 6 de marzo de 1996, Soto presentó una queja escrita a la Gerente de Recursos Humanos de Trigo, Sra. Hilda Medina, por alegadamente haber sido víctima de hostigamiento sexual de parte de Salgado. La Sra. Medina le indicó a Soto que haría una investigación al respecto, pero que continuara con sus labores en la empresa. El esposo de Soto, alegadamente, le respondió que ésta no regresaría a trabajar y se marcharon. Soto no se presentó a trabajar desde el 6 de marzo de 1996, ni se comunicó para excusarse. A raíz de sus ausencias, Trigo le envió una carta en la cual le indicó que como no se había presentado a trabajar, entendían que renunciaba al empleo y le enviaron la liquidación por los días acumulados de vacaciones y enfermedad no disfrutados. Soto nunca contestó dicha carta.
El mismo día 6 de marzo de 1996, la Sra. Medina se reunió con el Sr. Carlos Suárez, ex Gerente General, Mildred Calderón, Contralor y con Salgado para discutir las alegaciones de Soto. Luego de esa reunión, la Sra. Medina comenzó a entrevistar a los empleados que estaban en el área de producción el día de los alegados hechos. Las declaraciones juradas de esas personas formaron parte de la prueba presentada por la parte apelada. Según se desprende de las mismas y del testimonio del Sr. Torres, testigo de Soto, nadie observó ninguna conducta impropia que pudiera constituir hostigamiento sexual por parte de Salgado hacia Soto, ni el día de los alegados hechos, ni en ocasiones anteriores. Por lo tanto, el resultado de la investigación realizada por Medina fue que Salgado no incurrió en conducta impropia o que pudiera interpretarse como hostigamiento sexual en contra de Soto. Dicho resultado no le fue informado a Soto por ésta no haber regresado más a la compañía. Soto alegó que no se presentó más a trabajar, en espera de los resultados de lo expuesto en la carta y por sentir temor de represalias al haberse quejado de su jefe.
El 23 de enero de 1997, los apelantes presentaron demanda ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, sobre Hostigamiento Sexual, Ley de Salario Mínimo y Despido Injustificado, en contra de los apelantes, la cual fue contestada el 18 de febrero de 1997 y enmendada el 30 de mayo del mismo año.
El 17 de diciembre de 1998, comenzó el juicio en su fondo. El tribunal de instancia, al comienzo del mismo, señaló que había emitido una sentencia parcial el 3 de noviembre de 1998, notificada y archivada en autos el 12 de enero de 1999, en cuanto a la reclamación por concepto de vacaciones, días de enfermedad, bono de Navidad, salarios etc., al haber aprobado una estipulación entre las partes en cuanto a esos aspectos. Determinó entonces el tribunal, que la única reclamación a dilucidarse durante el juicio seria la de *827 hostigamiento sexual y la reconvención de los demandados.
El Tribunal de Primera Instancia, luego de evaluar la prueba presentada por las partes, emitió sentencia el 30 de julio de 1999, notificada y archivada en autos el 8 de septiembre de 1999, declarando No Ha Lugar, tanto la demanda como la reconvención de los apelados.
Los apelantes, no conformes con tal determinación, acuden ante nos mediante escrito de certiorari el 8 de octubre de 1999, y nos señalan los siguientes errores:

“1) Erró el Honorable Tribunal de Instancia al entender en su sentencia que la reclamación por despido injustificado había sido resuelta por estimulación.

2) Erró el Honorable Tribunal de Instancia al no considerar las condiciones discriminatorias en el empleo contra la apelante Sra. Soto.

3) Erró el Honorable Tribunal de Instancia en su apreciación sobre la política de hostigamiento sexual que el coapelado [sic] Trigo Corporation tenía implementada [sic],

4) Erró el Honorable Tribunal de Instancia al convalidar el procedimiento investigativo realizado por el coapelado [sic] Trigo Corporation en la querella de la apelante.

5) Erró el Honorable Tribunal al realizar el análisis de los hechos alegados de hostigamiento sexual.

6) Erró el Honorable Tribunal de Instancia al considerar que la apelante Irma Soto renunció a Trigo Corporation. ”

Al estar el recurso ante nos perfeccionado, procedemos a resolver.
II
En cuanto al primer señalamiento de error, resolvemos que el contrato de transacción judicial, adopta, de ordinario, la forma de una estipulación suscrita por las partes o por sus abogados y que es aceptada por el tribunal. Crespo Cardona v. Autoridad de Carreteras, 136 D.P.R. 938, 939 (1994); Sucn. Román v. Shelga Corp., Ill D.P.R. 782, 786 (1981); Díaz Torres v. Rivera, 96 D.P.R. 560, 564 (1968). De este modo, la estipulación que termina un pleito (o la totalidad de una reclamación en un pleito que envuelva reclamaciones múltiples) constituye un contrato de transacción que obliga a las partes. Art. 1709 del Código Civil, 31 L.P.R.A. see. 4821; Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 74 (1987).
Cuando las partes suscriben una estipulación para finalizar una causa de acción presentada ante los tribunales y dicha estipulación es avalada por el tribunal de instancia, como ocurrió en el presente caso, la estipulación se convierte en un contrato entre las partes, cuyo cumplimiento debe ser conforme a sus términos y condiciones. Magee v. Alberro, 126 D.P.R. 228, 232 (1990); Sucesión Román v. Shelga Corp., supra. Las obligaciones que nacen de los contratos tienén fuerza de ley entre los contratantes y deben cumplirse a tenor con los mismos. Artículo 1044 del Código Civil, 31 L.P.R.A. see. 2994; Mercado Rivera v. Universidad Católica, Opinión de 27 de junio de 1997, 97 J.T.S. 106, a la página 1276.
En el caso de autos, el tribunal de instancia emitió una sentencia parcial el 3 de noviembre de 1998, notificada y archivada en autos el 12 de enero de 1999, la cual advino final y firme, ya que la misma no fue apelada por ninguna de las partes. Por lo tanto, lo estipulado constituye un contrato entre las partes, el cual ahora no pueden lo apelantes impugnar. El primer error señalado fue resuelto mediante la referida estipulación, por lo que no estamos en posición de considerarlo.
*828 III
Por estar los últimos cinco errores relacionados con la apreciación de la prueba por el Tribunal de Primera Instancia, atenderemos en conjunto los mismos. La Ley 17 del 22 de abril de 1988, conocida como la Ley de Hostigamiento Sexual en el Empleo, establece en su artículo 3, 29 L.P.R.A. sec. 155(b) que:

“El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:

(a) Cuando el someterse a dicha conducta, se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona, se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo, intimidante, hostil u ofensivo. ”

Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular. Art. 4 de la Ley de Hostigamiento Sexual en el Empleo, supra. "A fin de cuentas, la pregunta de umbral en toda, reclamación de acuerdo con la modalidad de hostigamiento sexual por ambiente hostil, es si la alegada conducta constitutiva de hostigamiento fue lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse atendiendo la totalidad de las circunstancias y, muy en particular, a factores tales como la naturaleza de la conducta alegada, su frecuencia e intensidad, contexto en el cual ocurre, período de tiempo y su extensión, y la conducta y circunstancias personales del demandante". Sánchez v. Autoridad de Energía Eléctrica, Opinión del 9 de abril de 1997, 97 J.T.S. _, a la página 849, Delgado Zayas v. Hospital Interamericano, 137 D.P.R. 643, 652 (1994); Rodríguez Meléndez v. Supermercado Amigo, Inc., 126 D.P.R. 117, 132 (1990).
En el caso de autos, el Tribunal de Primera Instancia, luego de evaluar toda la prueba ante sí, determinó que no se dieron las circunstancias antes descritas para determinar que Soto fuera víctima de hostigamiento sexual en el empleo por parte de Salgado.
En nuestra jurisdicción, es norma reiterada que la apreciación de la prueba hecha por el foro primario merece gran deferencia por parte de un tribunal apelativo. En ausencia de error manifiesto, pasión, prejuicio o parcialidad, los tribunales apelativos no intervendrán con la apreciación de la prueba hecha por el Tribunal de Primera Instancia, Pueblo v. Rodríguez Santana, Opinión del 23 de octubre de 1998, 98 J.T.S. 141, página 234; Quiñones López v. Manzano Pozas, Opinión del 25 de junio de 1996, 96 J.T.S. 95, página 1305; Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 62-63 (1991). Dicha norma tiene como base la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2, la cual específicamente dispone que las determinaciones de hechos realizadas por el Tribunal de Primera Instancia no deberán ser alteradas, a menos que se demuestre que las mismas son claramente erróneas o producto de pasión, prejuicio o parcialidad. Maryland Casualty Co. v. Quick Cont. Co., 90 D.P.R. 329, 335-339 (1964).
De igual forma, es doctrina firmemente establecida en nuestro ordenamiento que los juzgadores de hechos merecen gran respeto y confiabilidad en la apreciación imparcial de la prueba, pues éstos gozan de la oportunidad de ver y escuchar directamente a los testigos. Flores Santiago v. Domínguez et al., Opinión del 30 de junio de 1998, 98 J.T.S. 96, página 1354; Pueblo v. Maisonave Rodríguez, supra. Por ello, no debemos intervenir con las determinaciones de hechos que hace un tribunal de instancia y sustituir su criterio por el del *829 juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su "demeanor". Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982). Sin embargo, lo anterior na significa que los tribunales de justicia poseen discreción absoluta y que las determinaciones de hechos del juez sentenciador tienen credenciales de inmunidad ante la función de un foro apelativo. Méndez v. Morales, Opinión del 15 de noviembre de 1996, 96 J.T.S. 149, página 347; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Pueblo v. Sánchez, 90 D.P.R. 197, 200 (1964).
Por lo tanto, la decisión de un foro primario sólo será revocada cuando al revisar el expediente en su totalidad, nos convencemos de que ha cometido un error significativo, o claro error de juicio en cuanto a un asunto material y relevante.
En el caso que nos ocupa, el tribunal recurrido le dio entero crédito a la prueba presentada por los apelantes. Estos demostraron a dicho foro, mediante testimonios orales de testigos y declaraciones juradas de personas que se encontraban en el lugar de los alegados hechos, que nadie observó ninguna conducta de hostigamiento por parte de Salgado hacia Soto. Este Tribunal se convence más de ello, toda vez que el tribunal a quo celebró una vista ocular en el lugar donde ocurrieron los alegados hechos, y las personas que fácilmente podían haber observado alguna situación extraña, aseguran que no sucedió nada, ni ese ni ningún otro día.
Los apelantes no nos han demostrado en que forma el tribunal de instancia incurrió en error manifiesto, pasión, prejuicio o parcialidad al dictar la sentencia desestimatoria. Las determinaciones de ese foro no nos producen insatisfacción de conciencia, ni estremecen nuestro sentido de justicia al así hacerlo, por lo que no debemos intervenir con ellas. López Vicil v. ITT Intermedia, Res. 4 de abril de 1997, 97 J.T.S. 42, página 838.
Por los fundamentos antes expuestos, CONFIRMAMOS la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General