JESÚS CRESPO CARDONA ET ALS., demandantes y recurridos, *v.* AUTORIDAD DE CARRETERAS ET ALS., demandados y recurrentes.

*Número:* CE-94-191      *Resuelto:* 9 de septiembre de 1994

*Héctor Quijano Borges* y *Concepción González Cordero*, abogados de la parte recurrente; *Edgardo Mesonero Hernández* y *Jorge L. Cajigas Morales*, abogados de la parte recurrida.

## SENTENCIA

## I

Hemos resuelto reiteradamente que una estipulación suscrita por las partes, y aceptada por el tribunal, que finaliza un pleito, constituye un contrato de transacción que las obliga. Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 74 (1987). No obstante, también hemos resuelto que, por su naturaleza, el contrato de transacción debe interpretarse restrictivamente. Íd. Específicamente, el Art. 1714 del Código Civil, 31 L.P.R.A. sec. 4826, limita la transacción, rigurosamente, a los objetos expresamente determinados o que por inducción necesaria de sus palabras deben reputarse incluidos.

La renuncia general de derechos se extiende a los que tienen relación con la disputa sobre la cual ha recaído la transacción. La razón para ello es que las transacciones se otorgan, por lo general, con carácter complejo por las entregas u obligaciones recíprocas de los contratantes, con sacrificios mutuos de régimen excepcional en algunos aspectos y, por lo tanto, no deben interpretarse con extensión, sino limitadamente, aunque sin descuidar lo de la reciprocidad como norma interpretativa. Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. XXVIII, pág. 355. Manresa añade que el Art. 1714, *supra*, tiene por objeto determinar la extensión de la transacción o los límites de su objeto. Según este autor, su fundamento estriba en que siendo por su naturaleza determinada la *litis* o la controversia extrajudicial, necesariamente tiene que tener dicho carácter la transacción; y que, en cuanto a la renuncia de derechos, es evidente que por más generales que sean sus términos tiene que seguir la naturaleza de la transacción a que va inherente y entenderse, por consiguiente, limitada a los mismos objetos, es decir, a las diferencias suscitadas

por las partes en la controversia sostenida por éstos, sobre la cual ha de versar la transacción. J.M. Manresa y Navarro, *Comentarios al Código Civil español*, Madrid, Ed. Reus, 1973, T. XII, pág. 760.

De otro lado, en *Negrón Rivera y Bonilla, Ex parte*, supra, resolvimos que a los contratos de transacción les aplican las reglas generales sobre la interpretación de contratos, en lo que no sean incompatibles con las normas que los regulan. Arts. 1709–1718 del Código Civil, 31 L.P.R.A. secs. 4821–4830. Sobre el particular señalamos:

> ...en relación con la interpretación de los contratos, Díez-Picazo nos dice que éstos "deben interpretarse de acuerdo con la buena fe ... [que es] un [*standard*] de conducta arreglada a los imperativos éticos exigibles de acuerdo con la conciencia social imperante .... Los contratos han de ser interpretados presuponiendo una lealtad y una corrección en su misma elaboración, es decir, *entendiendo que las partes al redactarlos quisieron expresarse según el modo normal propio de gentes honestas y no buscando circunloquios, confusiones deliberadas u oscuridades* .... El contrato debe ser interpretado de manera que el sentido que se le atribuya sea el más conforme para llegar a un desenvolvimiento leal de las relaciones contractuales y para llegar a las consecuencias contratuales exigidas conforme a las normas éticas. La buena fe impone también la aplicación de las ideas de confianza y autorresponsabilidad en la interpretación .... *Las declaraciones de voluntad deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe*". (Énfasis suplido.) L. Díez-Picazo, *Fundamentos del Derecho Civil patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I, Cap. XI, Sec. 45, págs. 251–252. (Énfasis en el original.) *Negrón Rivera y Bonilla, Ex parte*, supra, pág. 75.

Por último, en *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782, 787 (1981), expresamos que a pesar de que el contrato de transacción tiene el efecto de cosa juzgada, esto no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en que se levanta como defensa.

Analizaremos la controversia surgida en este caso conforme a este trasfondo jurídico.

## II

El caso de autos se inició en 1988 con una demanda presentada por el Sr. Jesús Crespo Cardona y su madre, la Sra. Ana Cardona López, por los daños y perjuicios que éstos alegadamente sufrieron por causa de una inundación que afectó su propiedad, en *marzo de 1987*, causada supuestamente como resultado de unos trabajos de desvío y recogido de aguas realizados en 1978 por la Autoridad de Carreteras en la Carretera Estatal Núm. 2. Posteriormente, las partes terminaron el litigio mediante una transacción por estipulación, a favor de los demandantes, la cual fue aprobada por el tribunal el *6 de febrero de 1992*.

El *23 de octubre de 1992* la propiedad de los demandantes volvió a inundarse como resultado de unas fuertes lluvias. Por tal razón, en 1993 presentaron una nueva reclamación por daños y perjuicios en la cual alegaron que la inundación fue como consecuencia de los antedichos trabajos realizados por la Autoridad de Carreteras en 1978. Alegaron, además, que la situación les creaba daños continuos y recurrentes cada temporada de lluvia y que así se lo habían informado constantemente a los demandados. La Autoridad de Carreteras presentó Moción de Desestimación y/o Solicitud de Sentencia Sumaria basada en la doctrina de cosa juzgada, habida cuenta que en el pleito anterior se había transigido el caso. En su moción la autoridad planteó "[q]ue la controversia descrita en la demanda ya fue dilucidada entre las mismas partes y sobre los mismos hechos en el caso de *Jesús Crespo Cardona y Ana Cardona López vs. Depto. de Transportación y Obras Públicas y Autoridad de Carretera de Puerto Rico*, Civil Núm.: CS 88–1209, ... en el cual se llegó a una Estipulación entre las partes y se dictó Sentencia a esos efectos, el pasado *6 de febrero de 1992*". (Énfasis suplido.) Los demandantes se opusieron a la mencionada moción. Alegaron que no era aplicable la doctrina de cosa juzgada en su carácter ofensivo, toda vez

que los hechos alegados en la primera demanda acontecieron en 1987 y los hechos de la segunda demanda ocurrieron en 1992.

Así las cosas, el lro de febrero de 1994 el Tribunal Superior, Sala de Aguadilla, dictó una resolución en la cual denegó la moción de desestimación presentada por la Autoridad de Carreteras y declaró sin lugar la solicitud de sentencia sumaria. Inconforme con dicho dictamen, recurren los demandados mediante recurso de *certiorari* en el cual señalan, en síntesis, que erró el tribunal de instancia al no aplicar la doctrina de cosa juzgada. Procede que se confirme la resolución emitida por el Tribunal Superior.

En primer lugar, como señaláramos anteriormente, el tribunal de instancia no estaba impedido de interpretar la extensión y aplicación del contrato de transacción pactado.

En segundo lugar, conforme a la norma de interpretación restrictiva de los contratos de transacción, surge, claramente, que la estipulación habida se refería a los daños presentes y futuros producto de los hechos ocurridos en 1987. Los daños reclamados en la segunda demanda son producto de unos hechos ocurridos en 1992.

En tercer lugar, la Autoridad de Carreteras basa su petición de *certiorari* en que los hechos, aunque en tiempos distintos, ocurrieron en el mismo lugar y entre las mismas partes y que, por lo tanto, para que la Autoridad de Carreteras responda civilmente era necesario incluir en la estipulación que se trataba de un daño continuo y proveer remedios para esa eventualidad. No estamos de acuerdo. Acceder a lo que solicitan sería otorgarle un relevo de responsabilidad absoluta al Estado por los alegados problemas de drenaje existentes en el área. Aun cuando se haya transado el primer pleito, eso no significa que con esta transacción el Estado se inmuniza de toda responsabilidad y se le releva de corregir los supuestos problemas existentes, pudiendo así desatenderse de cualquiera de los problemas resultantes de los trabajos de construcción realizados

en 1978. Llegar a otra conclusión no sólo estaría en contra de la interpretación restrictiva de este tipo de contratos, sino que además estaría en contra de los postulados de la buena fe contractual, ya que dicho acuerdo afectará adversamente los derechos de los demandantes al interpretarse que releva a la Autoridad de Carreteras, *para siempre*, de toda responsabilidad por eventos presentes y futuros derivados de los trabajos de construcción realizados en 1978.

Es importante señalar que el señor Crespo Cardona, en su moción en oposición a la expedición de *certiorari*, incluye como Apéndice II una notificación dirigida a la Autoridad de Carreteras donde le advierte del problema. En ésta, con fecha de *8 de abril de 1992*, el señor Crespo Cardona le informa al Director Ejecutivo de dicha corporación sobre la transacción acordada a su favor y le solicita que corrijan los problemas del desagüe, toda vez que la posibilidad de daño era continua. Le indica, además, que existen varios estudios hidrológicos que constan en el expediente del caso que podrían ser utilizados por la agencia para corregir la situación. Como podemos notar, la Autoridad de Carreteras había sido advertida de que el problema aún existía y que eventos futuros podían producir otras inundaciones y causar otros daños.

Por todo lo antes expuesto, *se expide el auto y se dicta sentencia confirmando la resolución emitida por el Tribunal Superior, Sala de Aguadilla, el 1ro de febrero de 1994.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García no intervino. El Juez Asociado Señor Rebollo López disintió con una opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

La decisión mayoritaria emitida en el presente recurso —uno que plantea una sencilla cuestión sobre la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción— *es una trágica y funesta que tendrá graves consecuencias en la práctica de la profesión en Puerto Rico*; en específico, en la fase de la litigación.

I

*El día 3 de mayo de 1988*, Jesús Crespo Cardona y su señora madre, Ana Cardona López, radicaron ante el Tribunal Superior de Puerto Rico, Sala de Aguadilla, una demanda en reclamación de los daños y perjuicios que sufrieron como consecuencia de una inundación que afectara su propiedad; *inundación alegadamente causada por unos trabajos de drenaje que había realizado la demandada Autoridad de Carreteras en el año 1978*. Dicho pleito terminó con una *transacción por estipulación* que suscribieron las partes. La referida estipulación fue *aprobada* por el tribunal de instancia, mediante la emisión de la correspondiente *sentencia* a esos efectos. Debe señalarse que en dicha estipulación, las partes acordaron *transigir* la reclamación por la *suma* total de nueve mil quinientos dólares ($9,500).

Procede *enfatizar* el hecho de que en la mencionada estipulación de transacción, y a cambio de la referida suma de dinero, se hizo *expresamente* constar que la parte demandante

> ... *releva y para siempre descarga* a la parte demandada de *todas* las reclamaciones y/o causas de acción *pasadas, presentes y futuras* que surjan por *cualquier* motivo o razón de *cuales-*

*quiera* daños o pérdidas que dicho demandante haya sufrido *o pueda sufrir* como consecuencia de los hechos alegados en la demanda. (Énfasis suplido.) *Exhibit* III.

En el año de 1993, los referidos demandantes presentaron ante el antes mencionado tribunal de instancia una *nueva* demanda de daños y perjuicios. En esta *segunda* demanda alegaron que, *como consecuencia de los antes mencionados trabajos de drenaje realizados por la Autoridad de Carreteras en el año de 1978*, su propiedad nuevamente se inundó al llover copiosamente en dicha zona. La demandada Autoridad de Carreteras radicó una solicitud de sentencia sumaria; *predicada la misma en la doctrina de cosa juzgada.* Luego de que la parte demandante se opusiera a la misma, el tribunal de instancia, mediante resolución a esos efectos, declaró *sin lugar* la solicitud de sentencia sumaria.

Inconforme, la Autoridad de Carreteras acudió —vía *certiorari*— ante este Tribunal en revisión de la mencionada resolución, imputándole al foro de instancia, en síntesis, haber errado al no aplicar al caso la doctrina de cosa juzgada. Mediante Resolución de 20 de mayo de 1994, le concedimos término a la parte demandante para que mostrara causa

... por la cual este Tribunal no deba expedir el auto solicitado y dictar Sentencia revocatoria de la resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Aguadilla.

Luego de solicitar prórroga, y habiéndose concedido la misma, dicha parte compareció en cumplimiento de la referida Resolución. En el día de hoy una mayoría de los integrantes del Tribunal resuelve que procede *confirmar* la resolución mediante la cual el foro de instancia denegó la solicitud de sentencia sumaria radicada por la Autoridad de Carreteras. *Disentimos.* Veamos por qué:

## II

Establece el Art. 1709 del Código Civil, ante, sec. 4821, que la "transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". Conforme a ello, *reiteradamente* este Tribunal ha resuelto que una estipulación, suscrita por las partes y aceptada por el tribunal, que finalice un pleito *constituye un contrato de transacción que las obliga.* Véanse: *Consejo de Titulares v. C.R.U.V.*, 132 D.P.R. 707 (1993); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 74 (1987), y casos allí citados. Resulta aplicable, *además*, al presente caso el Art. 1715 del Código Civil, 31 L.P.R.A. sec. 4827, el cual, en lo pertinente, dispone que la "transacción tiene para las partes *la autoridad de la cosa juzgada* ...". (Énfasis suplido.)

## III

De un examen de ambas demandas, notamos que las mismas se basan en los daños sufridos como consecuencia de unas labores *únicas* de recogido y desvío de aguas llevadas a cabo por la Autoridad de Carreteras en el año 1978. Ambas demandas son *prácticamente idénticas* con excepción de que en la primera se reclamaron daños sufridos por una inundación ocurrida en 1987 y en la segunda por una alegadamente ocurrida en 1992.

En la estipulación que suscribieron las partes en el *primer* pleito se hizo constar que "en consideración a la suma antes relacionada *la parte demandante releva y para siempre descarga a la parte demandada de todas las reclamaciones y/o causas de acción pasadas, presentes y futuras* que surjan por cualquier motivo o razón *de cualesquiera daños o pérdidas que dicho demandante* haya sufrido o

*pueda sufrir como consecuencia de los hechos alegados en la demanda*". (Énfasis suplido.) *Exhibit* III. Basándose ambas demandas en daños sufridos como consecuencia de las labores realizadas por la Autoridad en 1978, *resulta claro que la estipulación acordada en el primer pleito impide a los demandantes instar nueva demanda reclamando nuevos daños como consecuencia de las mismas labores.*

Ello así por cuanto resulta ser aplicable al segundo pleito *la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción.* Véase *Zambrana v. Tribunal Superior*, 100 D.P.R. 179 (1971). Debe recordarse que el propósito de la defensa de cosa juzgada, *en su aspecto de fraccionamiento de causa de acción*, es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto. *Zambrana v. Tribunal Superior*, ante.

## IV

Los demandantes, *quienes como toda parte demandante en un pleito civil ordinario tenían la obligación de probar su caso en un juicio plenario*, optaron por *transigir* su caso. No debemos perder de vista que éstos sabían, *o debían saber*, si las labores de drenaje realizadas por la Autoridad de Carreteras en el 1978 podían causar inundaciones sucesivas y, en consecuencia, daños continuos a su propiedad. Optaron, *repetimos*, por transigir el caso por la suma total de nueve mil quinientos dólares ($9,500) *¿Por qué razón así lo hicieron?* Acaso sería por razón de que tenían dudas sobre si podían, o no, "probar" su caso en un juicio plenario. El foro judicial *nunca* lo podrá saber. Lo que *sí* sabemos es que la transacción acordada *relevó* a los demandantes de esa obligación. Ese fue el "beneficio" por ellos obtenido como consecuencia de la transacción efectuada.

La demandada Autoridad de Carreteras, *parte que ob-*

*viamente estaba consciente de que tenía que ser vencida en un juicio plenario,* igualmente optó por transigir el caso. *Cabe preguntar:* ¿cuál fue el "beneficio" por ésta obtenido con motivo de la transacción llevada a cabo? La contestación salta a la vista y hiere la retina: *los términos en que fue concebido el relevo contenido en la estipulación suscrita por ambas partes.*

Recordaremos que, a cambio de la suma total de nueve mil quinientos dólares ($9,500), la parte demandante, *voluntaria y libremente,* relevó, *para siempre,* a la Autoridad de responsabilidad por *cualquier* daño, *pasado o futuro,* que hubieran sufrido, *o sufrieran,* los demandantes como consecuencia de los trabajos de drenaje que la Autoridad realizó en el año 1978. *Nada más y nada menos.*

## V

*Resulta verdaderamente difícil de imaginar que pueda existir un lenguaje o unos términos y cláusulas más claros que los de la referida estipulación.* Ello no obstante, *y so color de "interpretar" los mismos,* en el día de hoy una mayoría de los integrantes del Tribunal resuelve que la referida estipulación "se refería [únicamente] a los daños presentes y futuros producto de los hechos ocurridos en 1987". Opinión mayoritaria, pág. 943.

Dicha posición *no* sólo es una total y completamente absurda *sino que* la misma afecta, de una grave manera, la práctica de la profesión en nuestra jurisdicción. *Cabe preguntarse qué abogado, de una parte demandada, se atreverá de hoy en adelante a recomendarle a un cliente que transija un caso pendiente ante nuestros tribunales. Realmente, ninguno.* Ello así ya que, no importa los términos claros y diáfanos en que éste plasme una estipulación sobre transacción —*en lo relativo al relevo de responsabilidad futura del demandado ante la parte demandante*— siempre cabrá la posibilidad de que los integrantes de este

Tribunal, *en su infinita y teórica sabiduría*, "interpreten" los mismos en "forma restrictiva" y resuelvan que la transacción efectuada no relevó de responsabilidad futura a la parte demandada.

La decisión hoy emitida, en adición a *necesariamente confundir* a los abogados que se dedican a la litigación en Puerto Rico, abre las puertas para que se radiquen pleitos de "mala práctica" profesional contra aquel abogado que se arriesgue a transigir un pleito. *Resulta verdaderamente trágico y lamentable que este Tribunal emita decisiones como la presente. Las mismas tienen el efecto indeseable de erosionar, aún más, la imagen y opinión que de este Foro tiene la profesión y nuestros conciudadanos.*