ELISA SANTANA SANTANA
Demandante-Apelada

v.

SUCESION DE JOSEFINA SANTIAGO RIOS, COMPUESTA POR SUS HIJOS MARIA ELISA SANTIAGO SANTANA, JOSE MANUEL SANTIAGO SANTANA, FRANKLIN SANTIAGO JUSTINIANO, ET AL
Demandados-Apelantes

Núm. KLAN-01-00130

San Juan, Puerto Rico, a 15 de mayo de 2001

Panel sustituto integrado por su Presidente, el Juez Brau Ramírez, el Juez Ortiz Carrión y la Juez Pabón Charneco

Ortiz Carrión, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La sucesión de José Santiago Ríos apela de una sentencia sumaria parcial del Tribunal de Primera Instancia, Sala Superior de San Juan, en la cual en esencia, se hacen las siguientes conclusiones de derecho:

*"1. En la Escritura de Capitulaciones Matrimoniales otorgada por la demandante Elisa Santana y José Santiago Ríos, causante de la Sucesión demandada, no se estipuló el régimen económico para regir durante su matrimonio, ni se repudió el régimen de Sociedad de Bienes Gananciales. Ante la ausencia de tales estipulaciones, en el matrimonio rigió el régimen de sociedad de gananciales, el cual cobró vigencia por su propio efecto supletorio.*

*2. José Santiago Ríos no utilizó la potestad conferida por la Escritura de Capitulaciones Matrimoniales para adquirir bienes individualmente, por lo que todos los bienes adquiridos por el matrimonio Santiago Santana desde la fecha en que se celebró el matrimonio se reputan gananciales. La demandante Elisa Santana Santana tiene derecho a hacer suyo, según dispone el artículo 1295 del Código Civil, la mitad de las ganancias o beneficios obtenidos durante el matrimonio. De igual modo, le corresponde recibir la mitad de lo generado por el caudal durante el término de la comunidad en proporción a su cuota.*

*3. El matrimonio Santiago Santana otorgó una Escritura en la que se permutan varios bienes inmuebles a cambio de acciones de una entidad con el nombre de San Río Realty Corporation. Sin embargo, esa entidad no inició los trámites para su incorporación hasta 58 días después, por lo que al momento de otorgar la permuta esa entidad carecía de personalidad y capacidad jurídica. Ante tal circunstancia, los inmuebles continuaron perteneciendo al caudal ganancial, ya que la Escritura de Permuta adolece de nulidad absoluta.*

*4. La Escritura de Convenio Transaccional suscrita entre la demandante Elisa Santana Santana y José Santiago Ríos, luego de haberse divorviado, se otorgó bajo la base equivocada de que según la Escritura de Capitulaciones Matrimoniales, el matrimonio se regía por una sociedad de bienes gananciales, y que todos los bienes adquiridos durante la vigencia del matrimonio pertenecían privativamente a Santiago Ríos. La demandante Elisa Santana Santana compareció a la firma de la Escritura de Convenio Transaccional bajo la creencia de que no existían bienes gananciales, ya que el único derecho reconocido inicialmente por su esposo y posteriormente en el proceso de divorcio lo fue el de pensión ex cónyuge. En tales circunstancias, ella no podía renunciar a unos derechos que desconocía tener, al momento del otorgamiento de la Escritura de Convenio Transaccional."*

Además de tales conclusiones, el Tribunal recurrido resolvió que *"toda vez que la presente es una Sentencia Parcial que dispone tan sólo de algunas cuestiones de hechos y de derecho envueltas en este pleito, las anteriores determinacioens están sujetas a lo que este tribunal disponga en su día respecto a las demás cuestiones de hechos y de derecho envueltas en el pleito.* ▇

En su recurso, la parte recurrente plantea que el Tribunal recurrido incurrió en los siguientes errores:

*"1. Al determinar que existió una Sociedad Legal de Bienes Gananciales entre la demandante y el causante. Sus fundamentos: (i) el causante 'no utilizó la potestad conferida por la escritura de capitulaciones matrimoniales', (ii) el causante aceptó de la demandada un poder para actos de administración y enajenación de bienes; y (iii) la demandante y causante otorgaron Escritura de Rescisión de Capitulaciones Matrimoniales (Escritura nula por disposición de ley), la cual, según el Tribunal a quo, constituye 'una manifestación unilateral de Voluntad vinculante tanto para el señor Santiago Ríos (causante) como a (sic) para sus herederos'.*

*2. Al no reconocer eficacia jurídica a las Escrituras de: (i) Capitulaciones Matrimoniales, Número 89, otorgada por la demandante y el causante; ii) Permuta, Número 12, otorgada por la demandante y el causante a*

*favor de San Río Realty Corporation; y (iii) Convenio Transaccional, Número 23, otorgada por la demandante y el causante luego de decretado el divorcio.*

*3. Al no reconocer que la Escritura Número 23, otorgada por la demandante y el causante luego de decretado su divorcio, constituyó la liquidación de su comunidad de bienes."*

Antes de dilucidar estos señalamientos, pasamos a hacer una breve relación del trámite procesal y las determinaciones de hechos no controvertidos que surgen de la sentencia sumaria parcial recurrida.

## I

El 13 de noviembre de 1997, Elisa Santana Santana presentó una demanda contra la Sucesión del que fuera su esposo José Santiago Ríos y San Río Realty Corporation, solicitando la liquidación de la sociedad de bienes gananciales. Los codemandados miembros de la Sucesión que habían sido emplazados y San Río Realty Corporation contestaron la demanda. Luego, se efectuó un amplio descubrimiento de prueba en el que las partes tomaron deposiciones y se cursaron interrogatorios, requerimientos de admisión y producción de documentos. Posteriormente, los codemandados que fueron emplazados, con excepción del Banco Santander, presentaron una moción en la que solicitaron una sentencia sumaria parcial desestimando la demanda. La demandante por su parte, presentó una moción a ese reclamo, y una solicitud para que se dictara una sentencia sumaria parcial a su favor. Oportunamente, los codemandados presentaron su oposición a la solicitud de la demandante. En ese contexto quedó finalmente sometido el asunto a la consideración del Tribunal recurrido, el cual procedió a dictar sentencia sumaria parcial recurrida, en la que determinó que los siguientes hechos no están en controversia:

En septiembre de 1951, la demandante Elisa Santana Santana, quien contaba con 19 años de edad y un séptimo grado de escolaridad aprobado, y el señor José Santiago Ríos, comenzaron a vivir consensualmente. La pareja procreó dos hijos los codemandados María Elisa Santiago Santana, nacida el 18 de mayo de 1952, y el codemandado José Manuel Santiago, nacido el día 8 de abril de 1953.

En 1955, don José M. Santiago Ríos se divorció de la que hasta ese momento era su esposa legal y madre de sus dos hijos mayores, Milton y Franklin de apellidos Santiago Justiniano, la señora Justiniano.

En 1957, los señores Santiago Santana deciden contraer matrimonio legalmente y el 5 de junio de 1957 acuden ante el abogado y notario Lcdo. Carmelo Avila Medina, y otorgan la escritura número ochenta y nueve (89) titulada Escritura de Capitulaciones Matrimoniales. En esta escritura, las partes realizaron un inventario de los bienes que cada uno tenía antes de contraer matrimonio. No establecieron el régimen económico que regiría durante su matrimonio, ni repudiaron el régimen de sociedad de bienes gananciales. ■

Del inventario de bienes realizado por los otorgantes se estableció cuáles eran los bienes que cada uno tenía antes de contraer matrimonio. Del Sr. Santiago Ríos se expresó que tenía los siguientes bienes:

*"a. Tienda dedicada a la venta de mercancía seca, la cual radica en la Avenida Ponce de León, número mil doscientos dos (1202) en el sótano y primera planta del edificio que lleva dicho número, conocida como Tienda San Río radicada en Santurce, Puerto Rico.*

*b. Tienda dedicada a la venta de mercancía seca, la cual radica en la Avenida Ponce de León, número mil setenta y dos (1072) de Río Piedras; que incluye el primer piso del edificio que lleva dicho número, conocida coo Tienda San Río.* •

*c. Tienda dedicada a la venta de mercancía seca, la cual radica en la Avenida de Diego, número ochenta (80) de Río Piedras, Puerto Rico, en el primer piso del edificio que lleva dicho número, conocida como Tienda San Río.*

*d. La mitad del capital invertido con el Sr. David Arcelay, en la tienda radicada en la Avenida Ponce de*

*León, mil doscientos cuatro (1204) de Santurce, Puerto Rico, conocida como "Joe & Davis", la cual se dedica a la venta de zapatos.*

*e. Solar que radica en el Barrio Monacillos del término municipal de Río Piedras, marcado con el número catorce en el plano de Urbanización de la finca de la cual se segregó, con una cabida superficial de tres mil ochocientos veintitrés metros cuadrados."*

De la señora Santana se indicó que al momento del otorgamiento del instrumento público, ésta no poseía bienes muebles o inmuebles de clase alguno, y por ello no establece descripción o relación alguna.

El 25 de junio de 1957, la Sra. Santana y el Sr. Santiago Ríos acuden nuevamente ante el notario Carmelo Avila Medina y se otorga la escritura número 103 de Poder General, donde la demandante Elisa Santana confiere Poder General a favor de su esposo José Santiago Ríos, para que entre otras:

*"---PRIMERA: Para que administre, rija y gobierne todos los bienes muebles, derechos, acciones y valores propios de la otorgante, o de la Sociedad de Gananciales, compuesta entre ambos, que posea en la actualidad, o adquiera en lo sucesivo; los alquile, arriende, subarriende, venda absolutamente o con cualquier clase de pacto, retroventa, permuta, ceda, pignore, hipoteque, o de cualquier otra manera, adquiera las mismas clase [sic] de bienes derechos y valores para la compareciente, o la Sociedad de Bienes Gananciales...".*

En dicha escritura, la demandante reconoce expresamente la existencia de la sociedad de bienes gananciales al hacer mención de la existencia de la antes mencionada sociedad en ocho (8) ocasiones. De esta escritura, el causante José Santiago Ríos solicitó la primera copia expedida, y posteriormente con los años solicitó del notario seis copias adicionales, sin que se enmendara lo referente a la existencia de la Sociedad de Bienes Gananciales.

El 21 de noviembre de 1958, el matrimonio Santiago Santana adquiere por compra la parcela de 5.23 cuerdas en el Barrio Tortugo de Río Piedras.

El 1 de junio de 1967, la demandante Elisa Santana Santana y el causante José Santiago Ríos comparecen ante el notario don Carmelo Avila Medina y otorgan la Escritura Número 70, la que llamaron Escritura de Rescisión de Capitulaciones Matrimoniales. Esta escritura, aunque nula en cuanto al propósito que su título sugiere, sirve para demostrar de forma explícita la voluntad de las partes, al expresar en su párrafo tercero:

*"---TERCERO..., pero en ningún momento han tenido en mente, ni se han regido por la escritura de Capitulaciones Matrimoniales al efectuarse alguna transacción con respecto a los bienes que poseía José Manuel Santiago al contraer matrimonio: existiendo actualmente una verdadera sociedad legal de gananciales entre ambos."*

De la lectura de la escritura número setenta (70) surge de la intención de las partes era perpetuar su deseo de rescindir o dejar sin efecto lo expresado en la escritura número ochenta y nueve (89) al expresar:

*"Que en virtud de la presente, los comparecientes desean rescindir y/o dejar sin efecto o valor de clase alguna, la escritura número Ochenta y Nueve (89) del cinco de junio de mil novecientos cincuenta y siete ante el Notario Carmelo Avila Medina,--- Y más adelante y seguido expresaron: "asimismo interesan que se entienda que todas las propiedades adquiridas con posteridad a la celebración del matrimonio, pertenecen y forman parte de la sociedad legal de gananciales constituidas entre ambos comparecientes."*

El señor Santiago Ríos nunca utilizó la facultad que le confería la escritura de capitulaciones para comprar propiedades con sus bienes individuales.

El día 13 de julio de 1972 comparecen ante el Lcdo. Genovevo Meléndez Carrucini, los señores José M. Santiago, Vicente A. Santiago y Freddie Molina y juramentan Certificado de Incorporación de SAN RIO

REALTY CORPORATION, Affidávil núm. 7860.

Al día siguiente, el 14 de julio de 1972, la demandante es requerida por su esposo a la firma de una escritura y comparece junto a éste y el Sr. Freddie Molina en representación de la Corporación SAN RIO REALTY CORPORATION, ante el licenciado Genovevo Meléndez Santiago Ríos, nunca utilizó la facultad que le confería la escritura de capitulaciones para comprar propiedades con sus bienes individuales.

El día 13 de julio de 1972, comparecen ante el Lcdo. Genovevo Meléndez Carrucini, los señores José M. Santiago, Vicente A. Santiago y Freddie Molina y juramentan Certificado de Incorporación de SAN RIO REALTY CORPORATION, Affidávil núm. 7860.

Al día siguiente, el 14 de julio de 1972, la demandante es requerida por su esposo a la firma de una escritura y comparece junto a éste y el Sr. Freddie Molina en representación de la Corporación SAN RIO REALTY CORPORATION, ante el licenciado Genovevo Meléndez Carrucini y se otorga la Escritua de Permuta número doce (12) del 14 de julio de 1972.

El día 11 de septiembre de 1972, cincuenta y ocho días (58) después de otorgada la escritura de Permuta, se presenta por primera vez para su inscripción el Certificado de Incorporación. Posteriormente, el 18 de octubre de ese mismo año, el certificado le es devuelto por existir objeciones a la inscripción del mismo. Finalmente éste es registrado el 27 octubre de 1972, tres meses y medio (3 1/2) después de firmada la escritura de Permuta Núm. 12 del 14 de julio de 1972. En esta escritura compareció SAN RIO REALTY CORPORATION, representada por don Freddie Molina, don José M. Santiago Ríos, la demandante Elisa Santana Santana ante el Lcdo. Genovevo Meléndez Carrucini. SAN RIO REALTY CORPORATION compareció como cesionaria y citamos:

*"---Y DE LA SEGUNDA PARTE: La Corporación SAN RIO REALTY CORPORATION, Cesionaria') una corporación organizada de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, con oficina y domicilio principal de negocios en la ciudad de San Juan, Puerto Rico, representada en este acto por su Vicepresidente Don Freddie Molina Asegura el aquí compareciente en representación de SAN RIO REALTY CORPORATION, que habrá de acreditar dónde y cuándo fuere menester las facultades para comparecer en este otorgamiento a nombre y en representación de dicha Corporación......".*

La demandante y el Sr. José Santiago Ríos se divorciaron de acuerdo con la sentencia del caso el día 12 de octubre de 1972. Tanto a la demanda como en la contestación a la misma, se alegó la existencia de capitulaciones matrimoniales. Del expediente de (sic) caso surge que el causante don José Santiago Ríos fue representado por el Lcdo. Genovevo Meléndez y la demandante por la Lcda. Aida Martínez González.

El 17 de noviembre de 1972, se otorgó la escritura número 23 sobre Convenio Transaccional ante el Lcdo. Genovevo Meléndez Carrucini. En dicha escritura se dijo: Que el tribunal fijó sentencia *"cuya sentencia final y firme desde la misma fecha en que fue dictada por estipulación entre las partes"*, que se fijó una pensión de $1,200 mensuales a favor de la demandante.

Bajo su párrafo tercero, se manifestó que las partes:

*"---TERCERO: Que estando divorciados ya las partes y roto y disuelto el vínculo matrimonial que existía entre ellos, desean libre, voluntaria y espontáneamente transigir y conventir final y definitivamente todos los derechos presentes y futuros de carácter económico que tenga la señora Santana como consecuencia de divorcio decretado y de su condición de mujer divorciada del señor Santiago y a tales efectos...*

*---DECLARAN, ACUERDAN, CONVIENEN Y TRANSIGEN---*

---DOS: *Que antes de las partes contraer matrimonio, otorgaron capitulaciones matrimoniales... por lo que las partes están conscientes y así lo convienen, que no constituyeron sociedad de bienes gananciales.*

---TRES: *Que la señora Santana no adquirió para sí bienes o propiedades de clase alguna durante su matrimonio con el señor Santiago.*

---CUARTO: *Que teniendo la señora Santana interés en transigir sus derechos a la pensión alimenticia que le fue reconocida por el tribunal de acuerdo a la sentencia anteriormente expresada, así como los derechos que pueda tener a cualquier pensión alimenticia en el futuro, así como todos o cualesquiera otros derechos que puedan reconocerle las leyes, sobre los bienes de cualquier clase o naturaleza adquiridos antes o durante el matrimonio entre las partes y lo mismo que consten a nombre del señor Santiago como a nombre de la señora Santana o de ambos...".*

El 24 de abril de 1984, otorgó la escritura número cuatro (4) de permuta, sin la comparecencia de la demandante, ante el notario Genovevo Meléndez Carrucini, donde se permuta Parcela 5.23 cuerdas en el Bo. Tortugo de Río Piedras, a cambio de 400 acciones con valor de $100 de la Corporación SAN RIO REALTY CORPORATION, representada por su vicepresidenta y co-demandada Lcda. María Elisa Santiago Santana.

El día 22 de octubre de 1990, ante el Notario Luis López Gómez, el Sr. Santiago Ríos otorga la escritura número 36 de Testamento Abierto, donde declaró:

*"---Seis: Que su matrimonio con doña Elisa Santana Santana fue disuelto mediante divorcio de acuerdo con sentencia del Tribunal Superior de Puerto Rico, Sala de Bayamón, de fecha doce (12) de octubre de mil novecientos setenta y dos (1972) del Juez Agustín Mangual Hernández, en el Caso Civil Número CS guión setenta y dos guión cuatro mil trescientos catorce (CS 72-4314).--------*

*---Siete: que antes de contraer matrimonio con doña Elisa Santana Santana, otorgó Capitulaciones Matrimoniales mediante la escritura número ochenta y nueve (89) en San Juan, Puerto Rico, el día cinco (5) de junio de mil novecientos cincuenta y siete ante el Notario Público Carmelo Avila Medina, mediante la cual se estipula entre el testador y doña Elisa Santana Santana que contraerían matrimonio de acuerdo con dicha escritura, de forma tal que los bienes entonces presentes que aportaran al matrimonio fueran de la exclusiva pertenencia privativa de cada uno de los comparecientes, y asimismo, que los bienes que individualmente adquirieran en el futuro, una vez celebrado el matrimonio, pertenecerán privativamente a cada uno de los cónyuges, según la adquisición que hicieran.--------".*

Nada dijo sobre la existencia de la sociedad de bienes gananciales, reconocida por él tácitamente en su aceptación de la escritura de Poder General (103), así como expresamente en la escritura setenta (70) de Rescisión o anulación de la llamada escritura de capitulaciones. ■

La demandante fue mantenida ajena a la administración de los bienes limitándose su participación a ratificar con su firma, en los instrumentos públicos, el Poder General concedido a su esposo y causante en este caso, José Santiago Ríos.

El Sr. José Manuel Santiago Ríos falleció el día 23 de enero de 1992, el día 24 de marzo de 1993. (sic.)

El 22 de abril de 1994, se otorgó la escritura número 17 de Partición de herencia ante el notario Carlos M. Vergne Vargas. En esta fecha se otorgó también ante el mismo notario la escritura número Dieciséis (16) de Constitución de fideicomiso.

José Santiago Ríos, y luego sus herederos, desde 1992 han tenido la administración del caudal de la comunidad de bienes de forma exclusiva hasta el presente.

Además, antes de pasar a discutir el derecho aplicable, es conveniente hacer una relación de las transacciones efectuadas por Don José durante su matrimonío con Doña Elisa que surgen del Apéndice del recurso:

"1. El 10 de noviembre de 1958, Don José compareció en la escritura número sesenta y cuatro de compraventa ante el notario José Jiménez Aguayo. En dicha escritura compareció por derecho propio y como apoderado de su esposa, doña Elisa. En esta escritura, Don José, junto a Alonso Rivera González compró tres propiedades del señor Juan de Jesús Montalvo.

2. En noviembre de 1958, Don José compareció en la escritura número dos de segregación y compraventa, ante el notario Ricardo H. Francis Lajara, en la cual compra y segrega una finca de Don José Trías Monge. En dicha escritura también compareció por sí y como apoderado de su esposa.

3. El 3 de febrero de 1961, Don José, compareció en la escritura número cuatro de segregación, liberación, compraventa y constitución de hipoteca, ante el notario Aldo Segurola De Diego, en la cual comparece como comprador de un inmueble de la corporación Las Monjas Development. En dicha escritura compareció por sí y como apoderado de su esposa.

4. El 3 de febrero de 1961, Don José también compareció en la escritura número cinco de segregación, liberación, compraventa y constitución de hipoteca, ante el notario Aldo Segurola De Diego, en la cual nuevamente, aparece como comprador de un inmueble de la corporación Las Monjas Development. En dicha escritura compareció por sí y como apoderado de su esposa.

5. El 10 de agosto de 1961, Don José compareció en la escritura número veintitrés de compraventa, ante el notario José Jiménez Aguayo, en la cual los esposos Rivera González-Román vendieron a Don José unas participaciones correspondientes a un condominio. En dicha escritura compareció por sí y como apoderado de su esposa.

6. El 29 de diciembre de 1966, Don José compareció en la escritura número doscientos veinte de compraventa, ante el notario Carmelo Avila Medina, en la cual compró una propiedad de Rengas Corporation. En dicha escritura compareció sólo, aunque se indica que es casado con Doña Elisa.

7. El 10 de marzo de 1967, Don José y Doña Elisa comparecieron, como casados entre sí, en la escritura número cinco de constitución de hipoteca en garantía de un pagaré al portador ante el notario Darío Collazo Nuin.

8. El 14 de julio de 1972, Don José y Doña Elisa comparecieron, como casados entre sí, en la escritura número doce de permuta ante el notario Genovevo Meléndez Carrucini. En dicha escritura, ambos comparecieron como cedentes en pleno dominio de seis propiedades a la San Río Realty Corporation a cambio de acciones de la corporación cesionaria."

## II

En su recurso, los demandados aquí peticionados cuestionan varias de las conclusiones de derecho a las que llegó el Tribunal recurrido. Cuestionan la conclusión de que las Capitulaciones Matrimoniales no establecieron un régimen económico para el matrimonio, por lo que durante el matrimonio constituyeron una sociedad legal de gananciales como régimen supletorio. Cuestionan la conclusión de que el contrato de permuta con San Río Realty Corporation fuese inválido debido a que al otorgarse, esa entidad aún no había presentado su certificado de incorporación en el Departamento de Estado. Por último cuestionan que el Convenio Transaccional fuese inválido porque Doña Elisa desconocía los derechos que estaba renunciando.

Este tribunal considera innecesario analizar todos estos planteamientos. Si se declara la validez del Convenio Transaccional, es innecesario dilucidar los demás planteamientos.

El Tribunal recurrido reconoció que en el Convenio Transaccional, suscrito entre Doña Elisa y Don José, después de su divorcio, se estipuló que antes de contraer matrimonio, ellos habían otorgado una Escritura de Capitulaciones Matrimoniales en la cual estipularon que los bienes poseídos antes del matrimonio eran de exclusiva pertenencia privativa de cada uno, al igual que los bienes que individualmente adquirieran durante su matrimonio, y que no constituyeron sociedad de bienes gananciales al contraer matrimonio. Sin embargo, el Tribunal recurrido concluyó que esa estipulación se hizo a base de una interpretación jurídicamente incorrecta de las Capitulaciones Matrimoniales; y que Doña Elisa renunció a su derecho a bienes gananciales sin ser consciente de que tenía tal derecho, por lo que tal renuncia no fue válida y el Convenio Transaccional fue nulo. Sin embargo, ese análisis no es jurídicamente correcto. Veamos.

El artículo 1709 del Código Civil, 31 L.P.R.A. sec. 4821, establece lo siguiente:

*"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado."*

El contrato de transacción se clasifica como judicial o extrajudicial. El extrajudicial se caracteriza porque las partes acuerdan dirimir un desacuerdo y renunciar a derechos inciertos para evitar tener que dirimirlos en un pleito. *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 D.P.R. 860 (1995). A su vez, el artículo 1715 del Código Civil, 31 L.P.RA sec. 4827, recoge el principio de que la transacción tiene, para las partes, el efecto de cosa juzgada. Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre éstos. *Igaravidez v. Ricci,* **98 J.T.S. 143,** res. el 4 de noviembre de 1998; *Citibank v. Dependable Ins.,* 121 D.P.R. 503 (1988).

Existen tres elementos esenciales en la transacción: una relación jurídica incierta, la intención de los contratantes de sustituir la relación dudosa por otra cierta e incontestable, y una recíproca concesión de las partes en virtud de la cual, cada una de ellas, o dando, o reteniendo o prometiendo algo, sufre un sacrificio. En cuanto al primer elemento, los tratadistas están de acuerdo en que han de existir pretensiones contrarias, motivadas por una incertidumbre jurídica, bien porque de verdad el posible derecho de las partes sea incierto o dudoso objetivamente, o porque aquéllas estiman que a su juicio hay incertidumbre, aunque en realidad no la haya. Basta que las partes tengan diferentes criterios sobre una determinada relación jurídica, para que ésta se presente como dudosa, y sin tales diferencias no es posible que exista transacción. Véase Tomás Ogayar Ayllon, *Comentarios al Código Civil y Compilaciones Forales, Albaladejo,* compilador, Madrid, Editorial Revista de Derecho Privado, 1991, T. XXII, Vol. 2, en las págs. 3-4, 12, 17; Manresa, *Comentarios al Código Civil Español,* Madrid, Instituto Editorial Reus, S.A., 1973, T. XII, pág. 129; Castán, *Derecho Civil Español, Común y Foral,* Madrid, Instituto Editorial Reus, S.A., 1993, T. IV, pág. 819; Luis Díez-Picazo y Antonio Gullón, *Sistema de Derecho Civil,* Madrid, Editorial Tecnos, 6ta. ed.. 1994, Vol. II, en la pág. 490; *Citibank v. Dependable Ins, Co Inc., supra,* a las págs. 512-513. A su vez, en cuanto al requisito de recíprocas prestaciones, la contraprestación puede consistir en renuncia de derechos, ya que en ocasiones, el designio de poner término a un litigio, soslayar discusiones y no extraer del olvido hechos y actos ya ocurridos, mueven a los contratantes a la aceptación de acuerdos, sin iguales alcances y paridad de concesiones, llegándose al convenio, incluso con sacrificios, bien de orden moral o ya de tipo económico, todo con el exclusivo objeto de evitar los inconvenientes que los pleitos llevan siempre consigo. Véasa Manresa, *supra,* en la pág. 133.

Por otro lado, debido a su naturaleza, el contrato de transacción debe interpretarse restrictivamente. *Crespo Cardona v. Autoridad de Carreteras,* 136 D.P.R. 938 (1994); *Citibank v. Dependable Ins. Co., supra.* No obstante, podrá ser objeto de un contrato de transacción la renuncia de cualquier derecho que posean las partes. Así, el artículo 1714 del Código Civil, 31 L.P.R.A. sec. 4826, establece lo siguiente:

*"La transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma. La renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre la que ha recaído la transacción."*

La norma general es que los derechos concedidos por las leyes son renunciables, excepto cuando la renuncia sea contraria a la ley, la moral o el orden público, o en perjuicio de terceros. Véase, *Alicea Batlle v. Adm. de Servicios Médicos de Puerto Rico,* **2000 J.T.S. 169,** res. el 26 de octubre de 2000 (opinión concurrente del Juez Rebollo) Así lo dispone el artículo 4 del Código Civil, 31 L.P.R.A. sec. 4, el cual establece, en lo pertinente, lo siguiente:

*"Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero."*

La renuncia se llama recognoscitiva cuando un sujeto hace dejación de un derecho dudoso o controvertido. Este tipo de renuncia puede tener lugar en las transacciones. Antonio Cabanillas Sánchez, *Comentarios al Código Civil y Compilaciones Forales,* Albaladejo, compilador, Madrid, Editorial Revista de Derecho Privado, 1992, T. I, Vol. 1, pág. 749.

En el caso de autos, estamos ante un contrato de transacción en el que Doña Elisa renunció a:

*"...los derechos que pueda tener a cualquier pensión alimenticia en el futuro y así como todos o cualesquiera otros derechos que puedan reconocerle las leyes, sobre los bienes de cualquier clase o naturaleza adquiridos antes o durante el matrimonio entre las partes, y lo mismo que consten a nombre del SEÑOR SANTIAGO como a nombre de la SEÑORA SANTANA, o de ambos, a cambio de que el SEÑOR SANTIAGO transfiera y ceda a la SEÑORA SANTANA valores y propiedades específicas...".* El Tribunal recurrido concluyó que el Convenio Transaccional sólo incluyó los bienes expresados de forma clara y determinante en ella y que dicho Convenio se otorgó sobre la premisa equivocada de que ella y Don José no acumularon bienes gananciales durante su matrimonio, por lo que Doña Elisa no podía hacer una renuncia válida de bienes gananciales a los que no sabía que tenía derecho. ■ Sin embargo, como mencionáramos anteriormente, uno de los elementos del contrato de transacción es precisamente que exista incertidumbre jurídica, bien porque de verdad el posible derecho de las partes sea incierto o dudoso objetivamente, o porque aquéllas estiman que a su juicio hay incertidumbre, aunque en realidad no la haya.

Si se examina el lenguaje utilizado en el Convenio Transaccional, es necesario concluir que el mismo es claro, específico y no da lugar a otra interpretación que la renuncia final y definitiva de todos los derechos presentes y futuros de carácter económico que tenía Doña Elisa como consecuencia de su divorcio. La renuncia de derechos económicos que hizo Doña Elisa en el contrato de transacción, fue hecha con conocimiento de los derechos que renunciaba (derechos económicos que tuviera como consecuencia de su divorcio). No estamos ante una cláusula vaga y oscura, de la cual no surge la voluntad de renunciar a unos derechos. Tampoco estamos ante una renuncia en perjuicio de tercero o sobre derechos que aún no habían surgido.

Por los fundamentos expuestos anteriormente, se expide el auto de *certiorari*; se deja sin efecto la sentencia sumaria parcial recurrida; en su lugar se dicta sentencia sumaria parcial desestimando la demanda incoada por Doña Elisa contra los demandados aquí peticionarios; y se devuelve el caso al Tribunal recurrido para que continúe con cualquier procedimiento ulterior que no sea incompatible con lo aquí resuelto, y de no ser necesario otro procedimiento ulterior, para que dicte sentencia final de conformidad con lo aquí resuelto.

Lo acuerda y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

**ESCOLIOS 2001 DTA 164**

1. La sentencia parcial de la cual se apela no dispuso de la totalidad de la controversia, ni pretendió hacerlo. De tal modo, por no tratarse de una sentencia parcial final, no procedía un recurso de apelación, sino uno de *certiorari*. No obstante, el

artículo 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, 4 L.P.R.A. sec. 22k, dispone que la presentación de un escrito de apelación en un caso en que sólo procede una solicitud de auto de *certiorari,* no será motivo suficiente para desestimar y el escrito de apelación se considerará a todos los fines pertinentes como si fuera una solicitud de auto de *certiorari.* Por lo que el recurso se atiende como tal.

**2.** Este Tribunal ha examinado la referida Escritura de Capitulaciones Matrimoniales y considera apropiada aclarar que en ésta se dispuso lo siguiente:

*"---PRIMERO.- Que las partes aquí comparecientes tienen concertado contraer matrimonio y contraerán el mismo, de acuerdo con la presente escritura de Capitulaciones Matrimoniales, de forma tal que los bienes presentes que aportan al matrimonio, sean de la exclusiva pertenencia privativa de cada uno de los comparecientes.*

*---Así mismo, los bienes que individualmente adquieran en el futuro, una vez celebrado el matrimonio, pertenezcan privativamente a cada uno de los cónyuges, según la adquisición que hagan.*

*En virtud de ello, esta determinación del Tribunal recurrido es realmente una conclusión de derecho controvertible. Sin embargo, por las razones que más adelante se expondrán, no es necesario dilucidar esta cuestión."*

**3.** No existe controversia entre las partes sobre la nulidad de esta Escritura de Rescisión de Capitulaciones Matrimoniales.

**4.** En su sentencia, el Tribunal recurrido cita el caso de *Fenning v. Tribunal Superior,* 96 D.P.R. 615 (1968), para concluir que la señora Santana no podía renunciar a unos derechos que desconocía tener, Sin embargo, el caso de *Fenning* es distinguible del de autos, pues allí se trataba de una renuncia a derechos que aún no habían surgido.